PHOENIX AMERICA CORPORATION v. WILLIAM BRISSEY AND WIFE, GRACE M. BRISSEY, D/B/A THE FIREPLACE AND THINGS AND GRABIL, INC.

No. 7928DC817

(Filed 6 May 1980)

Constitutional Law § 24.7; Process § 9.1— goods delivered outside N.C.—nonresident defendants—insufficient minimum contacts for in personam jurisdiction

The courts of this State had jurisdiction under G.S. 1-75.4(5)(d) of an action to recover the purchase price of goods shipped by plaintiff from North Carolina to defendants in South Carolina. However, the nonresident defendants had insufficient minimum contacts with this State so that the assumption of *in personam* jurisdiction over defendants by the courts of this State would violate due process where defendants dealt with plaintiff on only one other occasion prior to the transaction in question; the purchase in issue involved only

$2,700; defendants have not been within North Carolina for at least two years; the order was solicited by plaintiff and accepted by defendants in South Carolina; payment by check for the goods was made to the driver of plaintiff's delivery truck and payment on the check was stopped through a bank in North Carolina; defendants have never done business in or engaged in solicitation or mail order sales within North Carolina; and defendants have not taken any action to avail themselves of the benefits and protection of the laws of North Carolina.

APPEAL by defendants from *Israel, Judge*. Order entered 20 July 1979 in District Court, BUNCOMBE County. Heard in the Court of Appeals on 6 March 1980.

Plaintiff is a North Carolina corporation with its principal place of business in Asheville, Buncombe County, North Carolina. Defendants William and Grace Brissey are residents of Anderson, South Carolina, where they operate a retail business known as the Fireplace and Things, which is a division of Grabil, Inc., a South Carolina corporation. In an unverified complaint filed 26 April 1979, plaintiff alleged that defendants ordered ten fireplace inserts from it in November 1978; that plaintiff shipped the order on or about 7 November 1978; and that defendants issued a check in payment for the order on 7 November, but subsequently stopped payment on the check. Defendants have since refused to pay for the goods, and plaintiff claims that defendants thus remain indebted to it in the amount of $2,700.00.

Responding, defendants filed a motion to dismiss for lack of personal jurisdiction and defective service of process. They supported their motion with the affidavit of Grace and William Brissey, wherein they avowed the following:

Neither the Brisseys individually nor the Fireplace and Things nor Grabil, Inc. has ever done business in or engaged in catalog or mail order sales within the State of North Carolina. None of them owns property in this State. The individual defendants have not been within the State of North Carolina for at least two years prior to 21 June 1979 and have not been in Asheville for at least five years prior thereto. With respect to the transaction at issue, defendants declared that Jerry Landreth, an agent for the plaintiff who resides in Seneca, South Carolina, initiated the sale to them of a quantity of stoves by approaching them at their place of business in Anderson with an offer of sale.

Defendants accepted in Anderson. Thereafter, the stoves were delivered to the Fireplace and Things "by truck and unloaded and accepted in Anderson, South Carolina, . . ." Defendants stated further that they paid the driver of the truck for the stoves upon delivery and that he then accepted payment. The only other contact they had had with the plaintiff was a previous, similar sale of stoves to them which Landreth also had solicited from them at their Anderson store, and in which the stoves were delivered and the truck driver paid in Anderson.

Plaintiff offered no opposing affidavits.

After a hearing, Judge Israel made findings of fact, concluded that the constitutional and statutory requisites for exercising personal jurisdiction over these defendants had been met and that service of process was proper, and entered an Order dated 26 July 1979 denying the defendants' motion to dismiss the plaintiff's complaint.

Defendants appealed.

*Gray, Kimel & Connolly, by David G. Gray, for the plaintiff appellee.*

*Van Winkle, Buck, Wall, Starnes & Davis, by Albert L. Sneed, Jr., for the defendant appellants.*

HEDRICK, Judge.

Although the denial of a motion to dismiss ordinarily is not immediately appealable, defendants in this case properly proceed pursuant to the provisions of G.S. § 1-277(b), which prescribes a right of immediate appeal where there has been "an adverse ruling as to the jurisdiction of the court over the person or property of the defendant. . . ." Since defendants are safely before us, we confront the crucial issue presented by their appeal, *i.e.*, were statutory and constitutional requirements satisfied so as to permit the courts of North Carolina to exercise jurisdiction *in personam* over these South Carolina defendants?

To resolve that issue, we must consider first whether a basis for asserting jurisdiction exists under the statute, G.S. § 1-75.4, commonly referred to as the "long-arm" statute, the provisions of which are recognized as a " 'legislative attempt to assert *in per-*

*sonam* jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause of the United States Constitution.'" *Sparrow v. Goodman*, 376 F. Supp. 1268, 1270 (W.D.N.C. 1974). To that end, the statute is accorded a liberal construction in favor of finding personal jurisdiction, subject only to due process limitations. *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 231 S.E. 2d 629 (1977); *see also Munchak Corp. v. Riko Enterprises, Inc.*, 368 F. Supp. 1366 (M.D.N.C. 1973).

Here, the statute clearly affords grounds for the exercise of jurisdiction by our courts. Subsection (5)(d) of § 1-75.4 provides for jurisdiction in any action which "[r]elates to goods, documents of title, or other things of value shipped from this State by the plaintiff to the defendant on his order or direction." It is not disputed that the goods in question were shipped from North Carolina. Thus, the initial inquiry in the determination whether jurisdictional grounds are present must be answered affirmatively.

Even so, we must further answer the question whether the exercise of jurisdiction offends or comports with due process. *United Buying Group, Inc. v. Coleman*, 296 N.C. 510, 251 S.E. 2d 610 (1979); *Dillon v. Numismatic Funding Corp., supra; Gro-Mar Public Relations, Inc. v. Billy Jack Enterprises, Inc.*, 36 N.C. App. 673, 245 S.E. 2d 782 (1978). This is the crucial inquiry and the ultimate determinative factor in assessing whether jurisdiction may be asserted under the "long-arm" statute. *Chadbourn, Inc. v. Katz*, 285 N.C. 700, 208 S.E. 2d 676 (1974); *Modern Globe, Inc. v. Spellman*, 45 N.C. App. 618, 263 S.E. 2d 859 (1980). The "litmus standard" for judging when a state may exercise *in personam* jurisdiction over a nonresident defendant is well-known and was established 35 years ago by the landmark case of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945): Due process requires that a nonresident defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Id.* at 316, 66 S.Ct. 158, 90 L.Ed. 102. *See also O'Neal v. Hicks Brokerage Co.*, 537 F. 2d 1266 (4th Cir. 1976). Helpful criteria for analyzing whether minimum contacts are present include:

[T]hree primary factors, namely, the quantity of the contacts, the nature and quality of the contacts, and the source and connection of the cause of action with those contacts, . . . and . . . two others, interest of the forum state and convenience. . . .

*Aftanase v. Economy Baler Co.*, 343 F. 2d 187, 197 (8th Cir. 1965) [per Justice (then Judge) Blackmun]. *See also Fieldcrest Mills, Inc. v. Mohasco Corp.*, 442 F. Supp. 424 (M.D.N.C. 1977); *McCoy Lumber Industries, Inc. v. Niedermeyer-Martin Co.*, 356 F. Supp. 1221 (M.D.N.C. 1973). Moreover, the analysis requires that the interests of and fairness to both the plaintiff and the defendant be carefully weighed and considered. *Dillon v. Numismatic Funding Corp., supra.* The determination cannot be effected by using a "mechanical formula or rule of thumb, but by ascertaining what is fair and reasonable and just in the circumstances." *Farmer v. Ferris*, 260 N.C. 619, 625, 133 S.E. 2d 492, 497 (1963); *see also Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

Applying these standards to the facts of the case before us, the quantity of the contacts which the Brisseys had with North Carolina is insubstantial. Their uncontradicted affidavit settled that they had dealings with the plaintiff on only one other occasion prior to the transaction giving rise to this lawsuit. Moreover, their undisputed claim is that they have not been within the State of North Carolina for at least two years, nor within Buncombe County for at least five years.

In our opinion, the nature and quality of the defendants' contacts with this State, on the record before us, is likewise *de minimus*. The purchase at issue involves only one sale, for a total amount of $2,700.00. [*Cf. Fieldcrest Mills, Inc. v. Mohasco Corp., supra,* which involved a contract amount in excess of $400,000.00.] Moreover, we think the sole thread linking the Brisseys to North Carolina is the processing of their order for stoves through the home office of the plaintiff in Asheville. The order, according to uncontradicted evidence, was solicited by plaintiff and accepted by defendants in South Carolina. The goods, while shipped from North Carolina, were accepted in South Carolina. Payment for the goods was made to the driver of plaintiff's delivery truck in South Carolina. Plaintiff appears to rely on the fact that payment on the

check was stopped through a bank in North Carolina, but we find that circumstance merely fortuitous and, in any event, insufficient to establish the requisite substantial connection between the transaction and this State. *Cf. World-Wide Volkswagen Corp. v. Woodson,* --- U.S. ---, 100 S.Ct. 559, 62 L.Ed. 2d 490 (1980).

We are aware that a single contract can furnish the basis for the exercise of jurisdiction over a nonresident. *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed. 2d 223 (1957); *Chadbourn, Inc. v. Katz, supra.* If the contract is to be actually performed in North Carolina and has a substantial connection with this State, jurisdiction will lie. *Staley v. Homeland, Inc.,* 368 F. Supp. 1344 (E.D.N.C. 1974). However, the mere act of entering into a contract with a forum resident, as here, will not provide the necessary minimum contacts with the forum state, especially when all the elements of the defendants' performance, as here, are to take place outside the forum. *See, e.g., Iowa Electric Light and Power Co. v. Atlas Corp.,* 603 F. 2d 1301 (8th Cir. 1979), *cert. denied,* 48 U.S.L.W. 3552 (26 February 1980). Furthermore, in cases of contract disputes, "the touchstone in ascertaining the strength of the connection between the cause of action and the defendant's contacts is whether the cause arises out of attempts by the defendant to benefit from the laws of the forum state by entering the market in the forum state." *Fieldcrest Mills, Inc. v. Mohasco Corp., supra* at 428; *see also Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed. 2d 1283 (1958); *Chemical Realty Corp. v. Home Federal Savings & Loan Assoc. of Hollywood,* 40 N.C. App. 675, 253 S.E. 2d 621 (1979), *appeal dismissed,* 48 U.S.L.W. 3517 (19 February 1980). Neither from the allegations of plaintiff's complaint nor from the averments of the Brisseys' affidavit could we conclude that either the individual or the corporate defendants in this case have undertaken any action by which they could avail themselves of the benefits and protections of our laws. They have declared, and the uncontested evidence confirms, that at no time have they carried on any business activity, including solicitation and mail order or catalog sales, in the State of North Carolina. Clearly, the only relevant activity occurring in North Carolina with respect to this transaction was actually carried on by the plaintiff, not the defendants, and that activity in our opinion was primarily ministerial in nature. Substantial performance of the contract, from its inception to its

conclusion, occurred in South Carolina. Any connection between defendants and this State existing by virtue of this contract is far too tenuous to satisfy "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington, supra.*

Consideration of the factors of convenience and interest of the forum state, when weighed in light of our interpretation of due process requirements, does not persuade us to change our decision to decline jurisdiction. While North Carolina certainly has an interest in providing a forum for its residents, such interest cannot be asserted to override the mandates of due process. As far as convenience to the parties is concerned, we think it just as convenient for plaintiff to pursue its cause against these defendants in South Carolina, especially in view of the fact that its agent who initiated and negotiated the sale is a South Carolina resident.

Defendants have argued other assignments of error which, because of our disposition of this issue, we find unnecessary to discuss.

We hold that the assertion of *in personam* jurisdiction over these defendants violates due process. We accordingly reverse and remand to the District Court for the entry of an Order dismissing the complaint.

Reversed and remanded.

Judges WEBB and WELLS concur.