HARRELSON RUBBER COMPANY v. BOBBY LEE LAYNE, SR. D/B/A BOBBY LAYNE TIRE AND RECAPPING

No. 8319SC1001

(Filed 17 July 1984)

1. **Process § 9— nonresident defendant—in personam jurisdiction—statutory authority**

    G.S. 1-75.4(5) conferred authority on the courts of N. C. to exercise personal jurisdiction over nonresident defendant, where the evidence tended to show that the parties had a franchise agreement whereby defendant, a Virginia citizen who conducted his business there, was given the right to use a patented retreading process which plaintiff, a Delaware corporation with its principal place of business in Asheboro, developed; plaintiff prepared and mailed its "Process Operating Manual" to defendant from N. C.; plaintiff manufactured precured tread rubber and cement for defendant in N. C.; all services provided for in the parties' franchise agreement were performed or to be performed by plaintiff from either of its N. C. plants or its offices in Asheboro; the materials and retreading equipment purchased by defendant from plaintiff were all shipped from N. C.; and a promissory note signed by defendant was to be paid to plaintiff at its Asheboro offices in thirty-six monthly installments.

2. **Constitutional Law § 24.7; Process § 9.1— nonresident defendant—minimum contacts—personal jurisdiction—no violation of due process**

    Defendant nonresident had sufficient minimum contacts with this State and the nature and quality of his contacts were such that exercise of personal jurisdiction over him did not violate his right to due process where plaintiff resident and defendant had an ongoing vendor-vendee relationship authorized by their franchise agreement; defendant made purchases from plaintiff on several occasions; defendant agreed to make payments on its promissory note at plaintiff's N. C. offices; and plaintiff's performance under the agreement occurred largely in this State.

APPEAL by plaintiff from *Beaty, Judge.* Order entered 3 August 1983 in Superior Court, RANDOLPH County. Heard in the Court of Appeals 7 June 1984.

*Beck, O'Briant and O'Briant, by Adam W. Beck, for plaintiff appellant.*

*Moser, Ogburn, Heafner & Miller, by D. Wescott Moser and Michael C. Miller, for defendant appellee.*

WHICHARD, Judge.

## I.

The issue is whether the court properly dismissed plaintiff's action for lack of personal jurisdiction over the nonresident defendant. We hold that G.S. 1-75.4(5) confers on our courts authority to exercise personal jurisdiction over defendant; that defendant's activities meet the minimum contacts test; and that exercise of jurisdiction thus does not offend due process.

## II.

Plaintiff is a Delaware corporation with its principal office and place of business in Asheboro, North Carolina. Defendant, a sole proprietor in a tire and recapping business, is a citizen and resident of Campbell County, Virginia, and conducts his business there.

This action arises from a franchise agreement which the parties executed on or about 1 May 1979. Plaintiff was the franchisor, and defendant the franchisee, under the agreement. The subject of the agreement, *inter alia*, was the right to utilize a patented retreading process which plaintiff developed.

Plaintiff sued defendant for breach of the franchise agreement, a $33,623.22 balance due on a promissory note, $13,683.42 plus interest due on an open account, royalty fees of twenty cents per pound of precured tread rubber and cement supplied by plaintiff and used by defendant in retreading tires. Defendant, who was duly served with summons, moved under G.S. 1A-1, Rule 12(b)(2) to dismiss for lack of jurisdiction over his person. Plaintiff appeals from an order granting this motion.

## III.

The test for establishing jurisdiction over nonresident individuals is two-pronged. The first step is to determine whether the "long-arm" statute, G.S. 1-75.4, confers jurisdiction. *Buying*

*Group, Inc. v. Coleman,* 296 N.C. 510, 513, 251 S.E. 2d 610, 613 (1979). With respect to contracts, this statute confers authority on our courts to exercise jurisdiction in any action which:

    a. [a]rises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to perform services within this State or to pay for services to be performed in this State by the plaintiff; or

    b. [a]rises out of services actually performed for the plaintiff by the defendant within this State, or services actually performed for the defendant by the plaintiff within this State if such performance within this State was authorized or ratified by the defendant; or

    c. [a]rises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to deliver or receive within this State, or to ship from this State goods, documents of title, or other things of value; or

    d. [r]elates to goods, documents of title, or other things of value shipped from this State by the plaintiff to the defendant on his order or direction.

G.S. 1-75.4(5).

[1] The franchise agreement, together with the promissory note, constituted a promise by defendant to pay for services actually performed prior to breach and to be performed in the future. G.S. 1-75.4(5)a, b. The services to be performed are illustrated by plaintiff's obligation under the agreement, *inter alia*, continually to improve its patented retreading process at its Asheboro plant, and to make such improvements available to defendant. Services actually performed in this state by plaintiff for defendant were the preparation and mailing of plaintiff's SUPERTREAD "Process Operating Manual," and the manufacture of precured tread rubber and cement as authorized under the franchise agreement. Defendant's own affidavit acknowledged that plaintiff had forwarded to him its "Process Operating Manual." An affidavit by plaintiff's president averred that all services provided for in the franchise agreement *"were performed* or to be performed by [plaintiff] from either of its North Carolina plants or its offices in

Asheboro, North Carolina." (Emphasis supplied.) An affidavit by a third party, who was familiar with this action and the negotiations between plaintiff and defendant, averred that "[t]he materials and retreading equipment purchased by the defendant from the plaintiff *were all shipped* from North Carolina." (Emphasis supplied.)

The $38,316.24 promissory note signed by defendant was to be paid to plaintiff at its Asheboro offices in thirty-six monthly installments of $1,064.34. A promise in a note to make payments to a plaintiff in the forum state is a promise to deliver there a thing of value within the meaning of G.S. 1-75.4(5)c. *Wohlfahrt v. Schneider*, 66 N.C. App. 691, 693, 311 S.E. 2d 686, 687 (1984). Plaintiff's mailing of the "Process Operating Manual" and shipping of the precured tread rubber and cement, all pursuant to the franchise agreement, constituted the shipping of goods from North Carolina by plaintiff to defendant on defendant's order or direction. G.S. 1-75.4(5)d.

We thus hold that G.S. 1-75.4(5) conferred authority on our courts to exercise personal jurisdiction over defendant.

IV.

The second step in the two-pronged test is to determine whether exercise of this statutory power offends the "minimum contacts" requirement of due process. *Buying Group, Inc., supra.*

> The 'litmus standard' . . . is well-known and was established . . . by the landmark case of *International Shoe Co. v. Washington* [citation omitted]: Due process requires that a nonresident defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'

*Phoenix America Corp. v. Brissey*, 46 N.C. App. 527, 530, 265 S.E. 2d 476, 479 (1980). This Court stated in *Phoenix*:

> Helpful criteria for analyzing whether minimum contacts are present include: '[T]hree primary factors, namely, the quantity of the contacts, the nature and quality of the contacts, and the source and connection of the cause of action with

those contacts, . . . and . . . two others, interest of the forum state and convenience.'

*Id.* at 530-31, 265 S.E. 2d at 479 (quoting *Aftanase v. Economy Baler Co.*, 343 F. 2d 187, 197 (8th Cir. 1965) ). Using these factors as a guide, we examine the facts here, in light of existing case law, to determine whether defendant had sufficient minimum contacts with the forum state.

## A. *Quantity of Contacts*

[2] The trial court found that defendant had made "purchases of retread rubber on several occasions from plaintiff's plants in North Carolina." This finding was not challenged by exception in the record. It thus is presumed to be correct and supported by competent evidence, and it is binding on appeal. *Tinkham v. Hall*, 47 N.C. App. 651, 652-53, 267 S.E. 2d 588, 590 (1980).

Further, affidavits in the record support the finding. Defendant's affidavit admits that plaintiff supplied him with precured tread rubber and cement. This corroborates plaintiff's president's affidavit, which avers that upon request and authorization of defendant plaintiff manufactured and shipped precured tread rubber and cement for defendant's use in the Harrelson SUPERTREAD Process. These affidavits also show that plaintiff prepared and mailed the "Process Operating Manual" to defendant from plaintiff's Asheboro plant. The third party's affidavit, referred to above, states that "materials and retreading equipment [were] purchased by the defendant from the plaintiff [and] were all shipped from North Carolina."

This evidence reveals a substantial quantity of contacts by defendant with the forum state, in that plaintiff furnished precured tread rubber to defendant on "several occasions" from plaintiff's plants in North Carolina. Plaintiff also furnished equipment and a "Process Operating Manual" to defendant, and these too were furnished from plaintiff's plants in North Carolina.

Defendant cites *Phoenix, supra,* as a basis for finding lack of jurisdiction. In *Phoenix* the purchase at issue involved a single sale. Plaintiff and defendant had "had dealings" on only one prior occasion. The quantity of contacts thus at best was two, and only one of those related to the action. Further, "all the elements of

the defendants' performance . . . [were] to take place outside the forum." *Phoenix, supra,* 46 N.C. App. at 532, 265 S.E. 2d at 480.

Here, by contrast, the parties had an ongoing vendor-vendee relationship authorized by the franchise agreement. Defendant made purchases from plaintiff on "several occasions." Plaintiff's performance under the agreement occurred largely in the forum state. We thus find *Phoenix* distinguishable and not controlling. We further find the requisite quantity of contacts adequately evidenced.

### B. *Nature and Quality of Contacts*

Generally, "[a]pplication of the 'minimum contacts' rule 'will vary with the quality and nature of the defendant's activity.' " *Chadbourn, Inc. v. Katz,* 285 N.C. 700, 705, 208 S.E. 2d 676, 679 (1974) (quoting *Hanson v. Denckla,* 357 U.S. 235, 2 L.Ed. 2d 1283, 78 S.Ct. 1228 (1958)). "The existence of minimum contacts, therefore, depends upon the particular facts of each case." *Chadbourn, Inc., supra,* 285 N.C. at 705, 208 S.E. 2d at 679; *see also Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 96 L.Ed. 485, 72 S.Ct. 413 (1952).

Here, defendant entered into a franchise agreement with plaintiff whereby defendant would receive rights to the patented trademark of Harrelson SUPERTREAD for selling recapped tires. The franchise agreement shows that the parties anticipated a long business relationship. The term of the agreement was for

> the life of any United States Patent application disclosing and claiming the Harrelson SUPERTREAD Process and for the life of the last to expire of any United States Patent covering the SUPERTREAD Process, and thereafter for so long as Franchisee [defendant] uses the Harrelson SUPERTREAD and/or Harrelson Trademark(s) and service mark(s), unless terminated sooner as provided hereinafter.

Since patents generally have a lengthy life, *see* 69 C.J.S. *Patents* § 164 (1951), and the term of the agreement extended even beyond expiration of plaintiff's patents if defendant continued to use plaintiff's trademarks or service marks, the parties clearly contemplated continuing, systematic activity. In *Styleco, Inc. v. Stoutco, Inc.,* 62 N.C. App. 525, 302 S.E. 2d 888, *disc. rev. denied,* 309 N.C. 825, 310 S.E. 2d 358 (1983), this Court upheld personal

jurisdiction over a foreign corporation on the ground, *inter alia*, that "this was not a single-item contract but the parties anticipated they would have a 'long, profitable relationship.'" *Id.* at 529, 302 S.E. 2d at 891.

Defendant relies on *Andrews Associates v. Sodibar Systems*, 28 N.C. App. 663, 222 S.E. 2d 922, *disc. rev. denied*, 289 N.C. 726, 224 S.E. 2d 676 (1976), in which the defendant's only contact with the forum state was that on two occasions it entered separate contracts, in Washington, D.C., with a North Carolina business association for delivery of certain goods by plaintiff from plaintiff's North Carolina warehouse. On the ground that there was "[n]o . . . continuing contractual relationship connecting defendant with the forum State," *id.* at 669, 222 S.E. 2d at 926, this Court reversed an order finding personal jurisdiction.

The facts here are different from those in *Andrews*. The franchise agreement here states:

WHEREAS, Franchisee [defendant] desires to retread tires for certain types of vehicles by the Harrelson SUPERTREAD Process and to market the tires it so retreads, using the commercial benefits of the Harrelson and SUPERTREAD names . . . Franchisor's technical knowhow, management and marketing expertise . . . commercial reputation of Franchisor . . . and [w]hereas, Franchisee desires the privilege of being a Vendee Franchisor with respect to certain materials and accessories and supplies marketed by the Franchisor . . . .

This and other language clearly evidences that the parties contemplated a continuing contractual business relationship, not one or two isolated transactions. The evidence also shows, and the court found without exception, shipments pursuant to the agreement "on several occasions," not just one or two.

The promissory note further evidences the nature and quality of defendant's contacts. Defendant therein promised:

[T]o pay to the order of [plaintiff] *at its office in Asheboro, North Carolina,* the principal sum of [$38,316.24] with interest on principal after the maturity . . . in . . . 36 equal monthly installments of $1,064.34 . . . on the 20th day of each month.

(Emphasis supplied.) The note thus contemplates repetitive activity occurring in the forum state.

The facts in *Wohlfahrt, supra,* were similar to those here with respect to the promissory note. There plaintiffs sued a non-resident defendant for $43,500, the balance allegedly due under the terms of a note executed incident to defendant's purchase of various articles of medical equipment from plaintiffs. Defendant appeared specially and moved to dismiss for lack of jurisdiction over his person. This Court held that exercise of jurisdiction over defendant would not offend due process. It stated:

> [D]ue process depends upon whether it is fair and reasonable to require a non-resident defendant to litigate the particular case involved in the forum state. Requiring the defendant to litigate his obligation under the note here seems entirely fair to us. He is the one that promised to make the note payments here, and in doing so he must have anticipated that here is where he would be sued if the payments were not made.

*Wohlfahrt, supra,* 66 N.C. at 694, 311 S.E. 2d at 688.

In *Trust Co. v. McDaniel,* 18 N.C. App. 644, 197 S.E. 2d 556 (1973), this Court held that "[w]here the nonresident defendant promises to pay the debt of another, which debt is owed to North Carolina creditors, such promise is a contract to be performed in North Carolina and is sufficient minimal contact upon which this State may assert personal jurisdiction over the defendant." *Id.* at 647, 197 S.E. 2d at 558 (citing *Koppers Co., Inc. v. Chemical Corp.,* 9 N.C. App. 118, 175 S.E. 2d 761 (1970)). A promise by a defendant to pay his own debt to a North Carolina creditor at its North Carolina offices is a fact which should have some bearing, when considered together with the other facts in the case, in determining whether sufficient minimum contacts exist upon which to assert jurisdiction.

Defendant relies in part on *Buying Group, Inc., supra.* The facts there differ significantly, however, from those here. There our Supreme Court held that our courts had no jurisdiction over a nonresident who merely co-signed a note guaranteeing payment of his brother's indebtedness to plaintiff. It found that the nonresident brother held "no attending commercial benefits to

himself enforceable in the courts of North Carolina." *Buying Group, Inc., supra,* 296 N.C. at 517, 251 S.E. 2d at 615. By contrast, defendant here was not an accommodation third party co-signer with "no attending commercial benefits to himself enforceable in the courts of North Carolina." He was, instead, a signatory to a franchise agreement which clearly contemplated continuing systematic business activity between himself and plaintiff. The activity on plaintiff's part was to occur largely within North Carolina. Such activity in fact occurred "on several occasions." Defendant promised to make its payments to plaintiff at its North Carolina offices. Defendant clearly could have enforced its "attending commercial benefits" under the agreement in the courts of North Carolina. The cases thus are readily distinguishable.

We find the nature and quality of defendant's contacts with this state sufficient that exercise of *in personam* jurisdiction over him by its courts does not offend traditional notions of fair play and substantial justice.

### C. *Source and Connection of the Cause of Action with Defendant's Contacts*

The causes of action asserted here—for breach of the franchise agreement to pay for services, balance due on open account for goods delivered, default on the note, and royalty fees per pound due on the precured tread rubber and cement furnished defendant by plaintiff—arise from the franchise agreement. By entering the agreement, defendant requested precured tread rubber and cement from plaintiff, which was to be delivered from plaintiff's North Carolina plants. Defendant also promised to pay the note to plaintiff at plaintiff's Asheboro office. Moreover, the franchise agreement entitles defendant franchisee to receive $500 for

> each modification and/or improvement disclosed by Franchisee to Assignor or Licensor of Franchisor hereunder, and on which Assignor or Licensor of Franchisor files an application for patent.

As noted, the agreement contemplated a continuing contractual relationship over an extended period of time, not one or two isolated transactions. Plaintiff in fact shipped goods to defendant,

pursuant to defendant's request under the agreement, on "several occasions," not just one or two. Repetitive activity in the forum state thus was contemplated by the agreement and in fact occurred. There were "attending commercial benefits" to defendant under the agreement, which defendant could have enforced in the courts of the forum.

We thus find that the source of the causes asserted here is in defendant's contacts with the forum state, primarily the franchise agreement which established a continuing contractual relationship over an extended period of time with a corporate citizen of the forum state; and that the causes are substantially connected with defendant's contacts.

### D. *Interest of the Forum State*

"Any state has a general interest in providing a forum for its residents to settle disputes in which they are involved." *Fieldcrest Mills, Inc. v. Mohasco Corp.*, 442 F. Supp. 424, 428 (M.D.N.C. 1977).

> North Carolina has a legitimate interest in the establishment and operation of enterprises and trade within its borders and the protection of its residents in the making of contracts with persons and agents who enter the state for that purpose.

*Byham v. House Corp.*, 265 N.C. 50, 60, 143 S.E. 2d 225, 234 (1965).

As a result of the franchise agreement and promissory note, the nonresident defendant allegedly is indebted to plaintiff, a corporate citizen of this state which was to perform its obligations largely within this state, for approximately $47,000 plus the amount due as royalty fees. The relationship between the parties under the franchise agreement, which was to be performed substantially within this state, together with defendant's obligation under the note, constituted the establishment of trade within this state. The fact that defendant never was physically present in this state should not control. As stated in *McGee v. International Life Insurance Co.*, 355 U.S. 220, 222-23, 2 L.Ed. 2d 223, 226, 78 S.Ct. 199, 201 (1957), "[t]oday many commercial transactions touch two or more States and may involve parties separated by the full continent." By entering the franchise agreement, defendant established a relationship with a corporate citizen of this state, which citizen was to perform and partially did perform largely

within this state. This state thus has an interest in providing plaintiff, its corporate citizen, with access to its courts to enforce the agreement.

### E. *Convenience*

Litigation on interstate business transactions inevitably involves inconvenience to one of the parties. The inconvenience to defendant of litigating in North Carolina is no greater than would be the inconvenience to plaintiff of litigating in Virginia. Under all the circumstances of this case, we find no convenience factors which are determinative of the jurisdictional issue.

### V.

The ultimate test for determining the existence of personal jurisdiction over a nonresident defendant is basic fairness. Because the franchise agreement established a continuing contractual relationship with a corporate citizen of this state which was to extend over a considerable period of time, the performance of which was to occur largely in this state, and which contains clear "attendant commercial benefits" to defendant, we perceive no unfairness inherent in requiring defendant to litigate in this state the causes asserted. Indeed, we believe it would be unfair to plaintiff if it could not litigate those causes here.

For the reasons and pursuant to the authorities set forth above, we thus hold that the courts of this state have statutory authority to assert personal jurisdiction over the nonresident defendant in this action; that it is fair and reasonable to require him to litigate the matter here; and that the exercise of the statutory authority to assert personal jurisdiction thus comports with the requirements of due process. Accordingly, the order of dismissal is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

Judges ARNOLD and EAGLES concur.