CHERRY BEKAERT & HOLLAND, a NORTH CAROLINA GENERAL PARTNERSHIP
v. J. CHARLES BROWN

No. 8926SC1074

(Filed 7 August 1990)

1. **Process § 9 (NCI3d)— nonresident individual—monies sent from N.C. to defendant—long-arm statute applicable**

    Because defendant, who withdrew from plaintiff partnership, directed plaintiff to send his monies to him in Alabama, and plaintiff distributed the money from N.C., the money paid was "shipped from this State by the plaintiff to defendant on his order or direction" within the meaning of the long-arm statute, N.C.G.S. § 1-75.4(5)(d); moreover, the present controversy over amounts owed by defendant to plaintiff for advising plaintiff's clients after defendant withdrew from the partnership was sufficiently related to previous payments by plaintiff in N.C. to defendant for his monthly draws and his capital account to merit long-arm jurisdiction.

    **Am Jur 2d, Process §§ 175, 178, 185.**

2. **Process § 9.1 (NCI3d)— nonresident defendant—sufficiency of contacts with N.C.—exercise of in personam jurisdiction proper**

    Defendant's contacts with N.C. were sufficient to allow in personam jurisdiction over him in this breach of contract action where the parties executed and conducted business pursuant to an N.C. partnership contract; the agreement existed for several years; pursuant to the agreement defendant received monthly and annual disbursements of earnings as well as his share of capital assets from N.C.; defendant obtained and renewed a CPA license from N.C. and used the license to provide accounting services for N.C. residents; defendant voluntarily associated with a business venture, whose primary place of business was N.C., to derive profitable business from N.C. and participated in the venture by serving Alabama and N.C. clients; N.C. thus had a specific interest in exercising personal jurisdiction over defendant to determine whether his actions damaged plaintiff; defendant returned to N.C. for yearly corporate meetings, participated in partnership management decisions as managing partner of the Mobile office, and consulted by telephone and corresponded with plaintiff in N.C.

**CHERRY BEKAERT & HOLLAND v. BROWN**

[99 N.C. App. 626 (1990)]

concerning business matters on a continuous and prolonged basis; defendant received benefits from the partnership contract and could have enforced the contract against plaintiff in N.C. courts; and location of witnesses and evidence in N.C. did not suggest that defendant would be unfairly inconvenienced by litigating this claim in N.C.

**Am Jur 2d, Process §§ 186-190.**

APPEAL by defendant from order entered 2 August 1989 by *Judge Frank W. Snepp, Jr.* in MECKLENBURG County Superior Court. Heard in the Court of Appeals 10 April 1990.

*Parker, Poe, Thompson, Bernstein, Gage & Preston, by Irvin W. Hankins III and Frank A. Hirsch, Jr., for plaintiff-appellee.*

*Moore & Van Allen, by Randel E. Phillips and Sharon L. Moylan, for defendant-appellant.*

GREENE, Judge.

Defendant appeals the trial court's denial of his Rule 12(b)(2) motion to dismiss plaintiff's breach of contract suit for lack of personal jurisdiction.

The record shows that defendant J. Charles Brown is a certified public accountant who now resides in Alabama. Plaintiff Cherry, Bekaert & Holland is a North Carolina partnership of certified public accountants with its principal place of business in Charlotte, North Carolina, since approximately 1974. Plaintiff first employed defendant in 1975 as a salaried accountant in Goldsboro, North Carolina. Defendant moved to plaintiff's Alabama office in 1977, where he drew a salary until 1979. In 1979, defendant became an "income partner" with plaintiff partnership and in 1981, became an "equity partner." Defendant signed the "equity partner" agreement on 9 January 1981, in Mobile, Alabama, and plaintiff's managing partner accepted and signed the agreement on behalf of the partnership on 14 January 1981, in Mecklenburg County, North Carolina. The "equity partnership" agreement provided in pertinent part:

15.7 . . . The withdrawing or expelled Partner's cash basis capital account shall be paid to him within ninety (90) days following the effective date of withdrawal or expulsion. . . .

15.9 . . . said withdrawing or expelled Partner shall pay to the Partnership, for the purchase of any client served . . . by said Partner within a three[-] (3) year period following the termination of his relationship with the Partnership, an amount not less than one hundred and fifty percent (150%) of the fees charged said client by the Partnership during the last twelve[-] (12) month period during which the Partnership served said client prior to said client being served by the said Partner plus an amount representing the excess, if any, of the fees charged by the said Partner for the twelve[-] (12) month period commencing with the time said Partner first served said client over the fees charged by the Partnership referred to above.

. . .

18.1 This agreement is made in Charlotte, North Carolina, and its validity, construction and effect shall be governed by and construed under the laws of the State of North Carolina.

Defendant gave notice that he was resigning from plaintiff's partnership effective 31 December 1987. After defendant's resignation from the partnership, he received his interest in the capital account from the partnership. Defendant continued to advise plaintiff's clients after his withdrawal from the partnership, and pursuant to section 15.9 of the partnership agreement plaintiff seeks monetary damages from defendant "for each client [defendant] serves within a three[-] (3) year period following his withdrawal from [plaintiff], an amount not less than one hundred fifty percent (150%) of the fees charged to the client by [plaintiff] during the last twelve (12) months during which [plaintiff] served with client." Defendant was personally served with process in Mobile, Alabama, and moved to dismiss this complaint in North Carolina according to N.C.G.S. § 1A-1, Rule 12(b)(2) (1983).

In summary form, the evidence adduced at the hearing of defendant's motion to dismiss indicates that during defendant's relationship with plaintiff partnership, the partnership held meetings which defendant attended in Charlotte, North Carolina. The North Carolina Association of Certified Public Accountants listed defendant as a "non-resident" accountant and he paid dues to the North Carolina Association based on his nonresident status. Defendant maintained a public accounting license in the State of North Carolina as well as in the State of Alabama. Defendant provided accounting and tax services to some clients in North Carolina from his office

in Alabama. He regularly received his "base-draw and his year-end draw" from plaintiff's earnings and profits, which were distributed from funds deposited in a North Carolina bank. Plaintiff's payments of these funds were regularly processed out of plaintiff's computer center located in Gastonia, North Carolina, and mailed to defendant in Alabama. As a partner in the partnership, defendant traveled to North Carolina "from time to time" to report on the progress of the Mobile, Alabama, office, was involved in telephone conference calls from Alabama with other partners or employees of plaintiff in Charlotte, North Carolina, and regularly corresponded with the Charlotte office "regarding the management and administrative concerns" of plaintiff. In denying defendant's motion to dismiss, the trial court entered an order which provided in pertinent part:

> IT APPEARING TO THE COURT from the facts set forth in the Motion of the defendant, and in the opposition papers filed by the plaintiffs[,] including the affidavits and exhibits attached thereto and the pleadings and papers filed herein, that the defendant's . . . [motion] should be denied . . .

The issues are whether the trial court should have denied defendant's motion to dismiss plaintiff's complaint for lack of personal jurisdiction because (I) statutory "long-arm" jurisdiction (A) did not exist since defendant did not order or direct plaintiff to send him from North Carolina a 'thing of value' and (B) plaintiff's action does not relate to the 'thing of value' sent from North Carolina; and (II) defendant did not have the required minimum contacts with North Carolina.

Although neither party states the basis for jurisdiction of this appeal, we note that "[a]ny interested party shall have the right of immediate appeal from an adverse ruling as to the jurisdiction of the court over the person or property of the defendant . . ." N.C.G.S. § 1-277(b) (1983).

We make a two-part inquiry to determine whether *in personam* jurisdiction exists. *Tompkins v. Tompkins*, 98 N.C. App. 299, 301, 390 S.E.2d 766, 767 (1990). "First, the transaction must fall within the language of the State's 'long arm' statute. Second, the exercise of jurisdiction must not violate the due process clause of the fourteenth amendment to the United States Constitution." *Tom Togs, Inc. v. Ben Elias Industries Corp.*, 318 N.C. 361, 364, 348 S.E.2d 782, 785 (1986) (citation omitted). "[When] jurisdiction is challenged,

plaintiff has the burden of proving *prima facie* that a statutory basis for jurisdiction exists." *Williams v. Institute for Computational Studies*, 85 N.C. App. 421, 424, 355 S.E.2d 177, 179 (1987) (citation omitted). "[T]he failure to plead the particulars of personal jurisdiction is not necessarily fatal, so long as the facts alleged permit the reasonable inference that jurisdiction may be acquired." *Tompkins*, at 304, 390 S.E.2d at 769 (citation omitted).

We note that the trial court did not make any findings of fact to support his ruling denying defendant's motion to dismiss. However, when there is no request of the trial court to make such findings, "we presume that the judge found facts sufficient to support the judgment. . . ." *Church v. Carter*, 94 N.C. App. 286, 289, 380 S.E.2d 167, 169 (1989). "[If the] presumed findings are supported by competent evidence in the record, [they] are conclusive on appeal, notwithstanding other evidence in the record to the contrary." *Id.*, at 289-90, 380 S.E.2d at 169.

I

Long-Arm Statute

A court has jurisdiction over a person:

> served in an action pursuant to Rule 4(j) or Rule 4(j1) of the Rules of Civil Procedure under any of the following circumstances: . . . (5) Local Services, Goods or Contracts.—In any action which: . . . d. Relates to goods, documents of title, or other things of value shipped from this State by the plaintiff to defendant on his order or direction . . .

N.C.G.S. § 1-75.4 (1983).

A

[1] Defendant concedes that he received 'a thing of value,' money, while in Alabama and that the money came from plaintiff's checking account in North Carolina. *See Pope v. Pope*, 38 N.C. App. 328, 248 S.E.2d 260 (1978) (within the meaning of the long-arm statute, a money payment is a 'thing of value'). However, defendant contends that plaintiff "could have maintained checking accounts in each of its many locales, [but t]here is no showing that [plaintiff] chose instead to process those checks [from North Carolina] because of any 'order or direction' [by defendant]." We disagree.

CHERRY BEKAERT & HOLLAND v. BROWN

[99 N.C. App. 626 (1990)]

Record evidence shows that when defendant withdrew from partnership, demanding payment of the sums, plaintiff actually paid such sums to defendant from its North Carolina account, facts which fulfill the statutory requirements for long-arm jurisdiction. Defendant argues a strict interpretation of N.C.G.S. § 1-75.4(5)(d) which would require personal jurisdiction only if defendant's 'order or direction' specifies that plaintiff *ship from this state* a thing of value. Defendant's argument is untenable in light of our courts' policy of liberally and broadly construing statutory jurisdictional requirements in favor of finding personal jurisdiction. *See Church*, at 290, 380 S.E.2d at 169. Because defendant directed plaintiff to send his monies to him in Alabama and plaintiff distributed the money from North Carolina, the money paid is 'shipped from this State by the plaintiff to defendant on his order or direction.'

B

Defendant also argues that long-arm jurisdiction does not exist because this action does not "relate" to plaintiff's payments to defendant of his monthly and yearly draws from the earnings and profits of the partnership and to the distribution by plaintiff to defendant of his capital account. We disagree.

Admittedly, this action for breach of contract does not "arise out of" any dispute regarding payment by plaintiff to defendant of his monthly draws and his capital account, as these terms are used in N.C.G.S. § 1-75.4(5)(a-c) and N.C.G.S. § 1-75.4(6). There is no present controversy relating to these previous payments. However, both the present controversy and plaintiff's previous payments to defendant arise from a single contract into which these parties entered, and liberally construed, the present controversy is sufficiently related to the previous payments 'shipped from this State by the plaintiff to the defendant on his order or direction' to merit long-arm jurisdiction.

II

Due Process Requirements

[2] Defendant contends that while he did have contact with North Carolina, the contacts are so attenuated that maintaining the suit offends traditional notions of fair play and substantial justice. We disagree.

To satisfy the requirements of the due process clause, there must exist "certain minimum contacts [between the non-resident defendant and the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice. . . .' " In each case, there must be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its law . . . This relationship between the defendant and the forum must be "such that he should reasonably anticipate being haled into court there."

*Tom Togs, Inc.*, at 365, 348 S.E.2d at 786 (citations omitted). The forum state may exercise jurisdiction over a defendant if there are "sufficient 'continuous and systematic' contacts between the defendant and the forum state." *Williams*, at 427, 355 S.E.2d at 181 (citation omitted).

Factors for determining existence of minimum contacts include " '(1) quantity of the contacts, (2) nature and quality of the contacts, (3) the source and connection of the cause of action to the contacts, (4) the interest of the forum state, and (5) convenience to the parties.' " *New Bern Pool & Supply Co. v. Graubart*, 94 N.C. App. 619, 624, 381 S.E.2d 156, 159, *affirmed per curiam*, 326 N.C. 480, 390 S.E.2d 137 (1990) (citations omitted). In each case, it is essential that defendant purposely act to avail himself of "the privilege of conducting activities within the forum State, thus invoking the protections and benefits of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L.Ed.2d 1283, 1298, *reh'g denied*, 358 U.S. 858, 3 L.Ed.2d 92 (1958). Additionally, defendant's contacts with the forum state must be such that he or she "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 62 L.Ed.2d 490, 501 (1980).

Defendant's contacts with North Carolina are numerous and more than adequate for jurisdictional purposes, as set out below.

First, the parties' execution of and conduct of business pursuant to a North Carolina partnership contract is sufficient for *in personam* jurisdiction.

"[A] single contract may be a sufficient basis for the exercise of *in personam* jurisdiction if it has a substantial connection with this state . . . [and] [u]nder North Carolina law, a contract is made in the place where the last act necessary to make it binding oc-

CHERRY BEKAERT & HOLLAND v. BROWN

[99 N.C. App. 626 (1990)]

curred." *Tom Togs, Inc.*, at 365, 367, 348 S.E.2d at 785, 786. A 'substantial connection' occurs when the parties have a "long[-] standing agreement" whose "payment arrangements" include the transfer of funds between the nonresident and the forum state. *Park v. Sleepy Creek Turkeys, Inc.*, 60 N.C. App. 545, 549, 299 S.E.2d 670, 672 (1983). "[A] continuing contractual business relationship, not one or two isolated transactions," is sufficient to establish *in personam* jurisdiction. *Harrelson Rubber Co. v. Layne*, 69 N.C. App. 577, 583, 317 S.E.2d 737, 741 (1984).

Here, the parties entered into the partnership agreement executed in North Carolina, which has a substantial connection to this state because the agreement existed for several years, pursuant to which plaintiff transferred funds to defendant. Defendant received monthly and annual disbursements of earnings as well as his share of capital assets from North Carolina.

Second, defendant purposefully availed himself of the privilege of conducting business in this state. Entering into a contract made in this state which has a substantial connection with this state constitutes a defendant's purposeful act in availing himself of the privilege of conducting activities in North Carolina. *Tom Togs, Inc.*, at 367, 348 S.E.2d at 787. Defendant's affirmative efforts to obtain and renew a certified public accountant's license from North Carolina and using the license to provide accounting services for North Carolina residents show defendant's purposeful acts obtaining and using this privilege.

Third, North Carolina has a specific interest in exercising personal jurisdiction over defendant to determine whether his actions damaged plaintiff.

"[A] state has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Id.* (taking judicial notice that "textile manufacturing is an important industry in North Carolina, giving North Carolina a special interest in [the] litigation"). When the state takes a 'special interest' in a particular subject of litigation, "North Carolina law would be the law to be applied." *Id.*, at 368, 348 S.E.2d at 787.

'North Carolina has a legitimate interest in the establishment and *operation of enterprises* and trade within its borders and the protection of its residents in the making of contracts with persons and agents who enter the state for that purpose.'

*Harrelson Rubber Co.,* at 586, 317 S.E.2d at 743 (citation omitted) (emphasis added). An "enterprise" is "[a] *venture* or undertaking[,] especially one involving financial commitment." Black's Law Dictionary 476 (5th ed. 1976) (emphasis added). "A partnership is a combination of two or more persons, their property, labor, or skill in a common business or *venture* under an agreement to share profits or losses, [in which] each party is an agent to the other and the business. *G.R. Little Agency, Inc. v. Jennings,* 88 N.C. App. 107, 110, 362 S.E.2d 807, 810 (1987) (emphasis added); N.C.G.S. § 59-36 (1989). North Carolina regulates the practice of certified public accounting in N.C.G.S. Chapter 93, §§ 93-1 — 13 (1985), and partnerships in the Uniform Partnership Act, N.C.G.S. §§ 59-31 — 59-73 (1989).

Defendant voluntarily associated with a business venture whose primary place of business is North Carolina, to derive profitable business from North Carolina, and participated in the venture by serving Alabama and North Carolina clients.

Fourth, defendant had a quantity of other 'systematic and continuous' contacts with North Carolina sufficient to show general jurisdiction. *Johnston v. Gilley,* 50 N.C. App. 274, 278, 273 S.E.2d 513, 516 (1981) (defendant's participation in management of a resident business entity is a factor that shows that defendant's contacts with the forum state are continuous, purposeful and systematic). Defendant returned to North Carolina for yearly corporate meetings, participated in partnership management decisions as managing partner of the Mobile office, consulted by telephone and corresponded with plaintiff in North Carolina concerning business matters on a continuous and prolonged basis. Each of these circumstances also illustrates that defendant sought, obtained and exercised the 'privilege of conducting activities in this state.'

Fifth, defendant received benefits from the partnership contract, and could have enforced the contract against plaintiff in North Carolina courts. If defendant derives benefits from the agreement and could have enforced the agreement in forum courts, personal jurisdiction is proper. *Harrelson Rubber Co.,* at 585, 317 S.E.2d at 742.

Sixth, location of witnesses and evidence in North Carolina does not suggest that defendant will be unfairly inconvenienced by litigating this claim in North Carolina.

CHERRY BEKAERT & HOLLAND v. BROWN

[99 N.C. App. 626 (1990)]

"Litigation on interstate business transactions inevitably involves inconvenience to one of the parties." *Id.*, at 587, 317 S.E.2d at 743. When "[t]he inconvenience to defendant of litigating in North Carolina is no greater than would be the inconvenience of plaintiff of litigating in [defendant's state] . . . no convenience factors . . . are determinative of the jurisdictional issue." *Id.* "[T]he location of crucial witnesses and material evidence . . . [are prohibitive concerns against granting jurisdiction in the forum state, but if nothing in the record] necessitates litigating this action in [defendant's home state there is] no untoward inconvenience on defendant. . . ." *Church*, at 293, 380 S.E.2d at 171.

Finally, defendant could reasonably foresee that partnership agreement disputes between plaintiff and him would be resolved in North Carolina courts, and it is fair to each party to resolve them in North Carolina.

The "crucial" foreseeability of being subject to litigation in the forum court is whether defendant could reasonably anticipate being haled into court. *Miller v. Kite*, 313 N.C. 474, 477, 329 S.E.2d 663, 665 (1985). "In making this determination, the interests of, and fairness to, both the plaintiff and the defendant must be considered and weighed." *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 678, 231 S.E.2d 629, 632 (1977).

A factor in determining fairness concerning a breach of contract cause of action is whether the contract expressly provides that the law of the forum state would apply to actions arising out of the contract. *See Marion v. Long*, 72 N.C. App. 585, 589, 325 S.E.2d 300, 304, *review denied, appeal dismissed*, 313 N.C. 604, 330 S.E.2d 612 (1985) (citation omitted). This partnership agreement specifically provides that North Carolina law governs the agreement.

In summary, we determine that competent record evidence supports the necessary presumed findings of fact sufficient to warrant the trial judge's denial of defendant's motion to dismiss for lack of personal jurisdiction.

Affirmed.

Judges WELLS and EAGLES concur.