CBP RESOURCES, INC., Plaintiff,

v.

INGREDIENT RESOURCE CORPORA-
TION; Feed Products and Service
Company, Inc., Defendants.

Civil No. 2:95CV370.

United States District Court,
M.D. North Carolina,
Greensboro Division.

April 5, 1996.

Thomas Barstow Kobrin, Isaacson and Isaacson, Greensboro, NC, for plaintiff.

Ellis B. Drew, III, Womble Carlyle Sandridge & Rice, Winston–Salem, NC, Feed Products and Service Company, Inc.

## MEMORANDUM OPINION

BULLOCK, Chief Judge.

In 1993, Plaintiff CBP Resources, Inc. ("CBP") entered into agreements with Defendants Ingredient Resource Corporation ("IRC") and Feed Products and Service Company, Inc. ("Feed Products") that made Defendants the exclusive distributors for CBP's products in designated parts of the United States. Alleging that IRC and Feed Products breached their agreements, CBP filed this suit for damages in the Superior Court of Guilford County, North Carolina. Defendants removed this suit to federal court on the basis of diversity jurisdiction, and now before this court is the motion of Feed Products to dismiss this action under Rules 12(b)(2) and (5) for lack of personal jurisdiction and for insufficient service of process. For the reasons discussed in this memorandum opinion, Feed Products' motion will be denied.

### I. *Personal Jurisdiction*

When a defendant challenges the court's exercise of jurisdiction over him, the plaintiff must prove the grounds for jurisdiction by a preponderance of the evidence. *Combs v. Bakker*, 886 F.2d 673, 676 (4th

Cir.1989). If jurisdiction turns on disputed issues of fact, the court may "address[ ] the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of the complaint." *Id.* If the court takes this route, however, the plaintiff need only make a *prima facie* showing of jurisdiction. *Id.* Then, the court must "draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir.1993); *accord* 2A James W. Moore *et al., Moore's Federal Practice* ¶ 12.07[2.–2] (2d ed. 1995).[1]

In diversity suits, the inquiry into personal jurisdiction has two steps. *Id.; Wolf v. Richmond County Hosp. Auth.,* 745 F.2d 904, 909 (4th Cir.1984), *cert. denied,* 474 U.S. 826, 106 S.Ct. 83, 88 L.Ed.2d 68 (1985). First, the court must determine whether the state long-arm statute authorizes the exercise or jurisdiction under the circumstances. Second, if the court finds such authorization, it must then consider whether the statutory assertion of jurisdiction is consistent with the Due Process Clause of the Constitution. *Mylan Labs.,* 2 F.3d at 60. Because the Supreme Court of North Carolina has interpreted the state's long-arm statute to extend to the limits of due process, however, *Dillon v. Numismatic Funding Corp.,* 291 N.C. 674, 676, 231 S.E.2d 629, 630–31 (1977), the two steps merge into one, *Ellicott Mach. Corp. v. John Holland Party Ltd.,* 995 F.2d 474, 477 (4th Cir.1993); *DP Environmental Servs., Inc. v. Bertlesen,* 834 F.Supp. 162, 164 (M.D.N.C.1993).

To decide whether the exercise of personal jurisdiction over Feed Products comports with due process, this court must consider "whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). Minimum contacts exist where a

defendant has " 'purposefully directed' " its activities at residents of the forum state. *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2181–82 (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984)). Minimum contacts are present where the defendant has engaged in conduct creating "a 'substantial connection' with the forum State" so that the defendant can be said to have purposefully "availed himself of the privilege of conducting business there." *Burger King,* 471 U.S. at 475–76, 105 S.Ct. at 2184 (quoting *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)).

Once it has found that a defendant purposefully established minimum contacts with the forum state, the court must then consider other factors to determine whether exercising personal jurisdiction would comport with " 'fair play and substantial justice.' " *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184 (quoting *International Shoe,* 326 U.S. at 320, 66 S.Ct. at 160). In *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Supreme Court indicated five factors to consider in this regard. They are:

> [T]he burden on the defendant, ... the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, ... the interstate judicial system's interest in obtaining the most efficient resolution of controversies[,] and the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* at 292, 100 S.Ct. at 564 (citations omitted).

Not surprisingly, the parties clash over the characterization of Feed Products' contacts with North Carolina. Feed Products points out that it has never done business in North Carolina, has no employees within the state, and does not own or lease any real property within the state. Feed Products also says that its officers have been in North Carolina only once, for a meeting

---

**1.** The court will rule based on the allegations in the pleadings and on affidavits the parties submitted with their briefs. The court notes, however, that by order dated August 22, 1995, it granted Feed Products' motion for discovery limited to the issue of jurisdiction. Since then, neither party has given the court any information that the party did not have before discovery.

and sales tour of Plaintiff's facilities. For its part, CBP points to the provision in the distributorship agreement specifying North Carolina law as governing the agreement and presents evidence that title to the products passed to Feed Products in Greensboro, North Carolina, and that Feed Products arranged for shipping from there. The most important dispute between CBP and Feed Products regards who initiated the relationship. Frederick H. Wellons, vice president of CBP, says that a company called "American Ingredient Marketing" ("AIM") initiated contact with CBP on behalf of Feed Products. (Wellons 7/14/95 Aff. ¶ 4.) In contrast, Feed Products says that Frederick Wellons was first to approach AIM, attempting to secure distributors for its products. (Thacker 7/7/95 Aff. ¶ 3.)

The court must resolve this conflict in favor of Plaintiff, *Mylan Labs.*, 2 F.3d at 60, and this fact weighs heavily in favor of finding jurisdiction. By reaching out and creating " 'continuing relationships and obligations' " with CBP, Feed Products may reasonably be required to submit to the jurisdiction of a court in North Carolina. *Burger King*, 471 U.S. at 473, 476, 105 S.Ct. at 2182, 2184; *see also CFA Medical, Inc. v. Burkhalter*, 95 N.C.App. 391, 395, 383 S.E.2d 214, 216 (1989) ("Which party initiates the contact is taken to be a critical factor in assessing whether a non-resident defendant has made 'purposeful availment.' ").

■ Citing *Phoenix America Corp. v. Brissey*, 46 N.C.App. 527, 265 S.E.2d 476 (1980), Feed Products asserts that "the mere act of entering into a contract with a forum resident ... will not provide the necessary minimum contacts with the forum state...." 46 N.C.App. at 532, 265 S.E.2d at 480. This is correct, as far as it goes. Sending one or more purchase orders into a state is not sufficient contact to support jurisdiction. *Bell Paper Box, Inc. v. Trans Western Polymers, Inc.*, 53 F.3d 920, 922 (8th Cir.1995); *Pacific Coral Shrimp v. Bryant Fisheries*, 844 F.Supp. 1546, 1550 (S.D.Fla.1994) (holding twenty-seven separate sales agreements with Florida companies did not mean Florida court had jurisdiction over defendant). Nev-

ertheless, even a single contract can give rise to jurisdiction when it amounts to purposeful direction of activity towards the forum state. *McGee*, 355 U.S. at 223, 78 S.Ct. at 201. CBP and Feed Products agreed that, for five years, Feed Products would be CBP's exclusive sales representative in ten states. CBP made the products in North Carolina and sold them to Feed Products here. Feed Products apparently was responsible for shipping the products out of North Carolina. Further, though this factor would not alone be dispositive, the parties' choice of North Carolina law also indicates that Feed Products purposefully availed itself of North Carolina's laws. *Burger King*, 471 U.S. at 482, 105 S.Ct. at 2187. This court thus finds that Feed Products had sufficient contacts with North Carolina to subject Feed Products to the jurisdiction of a North Carolina court.

■ Even though Feed Products had sufficient contacts with North Carolina to support jurisdiction, such exercise must also be consistent with " 'fair play and substantial justice.' " *First Am. First, Inc. v. National Ass'n of Bank Women*, 802 F.2d 1511, 1517 (4th Cir.1986) (quoting *Burger King*, 471 U.S. at 486, 105 S.Ct. at 2189-90). The most important factors are the interests of the plaintiff, defendant, and forum. *First Am.*, 802 F.2d at 1517. Certainly, it suits Plaintiff to litigate in its home state. North Carolina also has an interest in giving its residents a remedy for alleged breach of contract, an interest that is heightened by the choice of law provision in the agreement. Feed Products, in contrast, will undoubtedly find it less convenient to litigate in North Carolina than in its home state, but such inconvenience cannot rise to the level of a due process violation, particularly considering the Supreme Court's decision in *Burger King*. There, the Court held that due process permitted a national franchisor of restaurants to sue in Florida the owner of one of its franchised restaurants, who was a resident of Michigan. 471 U.S. at 487, 105 S.Ct. at 2190. The burden on Feed Products from litigating in North Carolina is roughly comparable to that borne by the defendant in *Burger King*. This burden is consistent with the requirements of "fair play and substantial justice."

## II. *Service of Process*

Feed Products has moved to dismiss the complaint for improper service of process under Rule 12(b)(5) of the Federal Rules of Civil Procedure. On January 9, 1995, CBP sent a letter to Feed Products purporting to terminate the exclusive distributorship. CBP filed a complaint with the Clerk of the General Court of Justice, Superior Court Division, Guilford County, North Carolina, on January 24, 1995, and the Clerk issued a summons. However, CBP made no attempt to serve this initial summons. Instead, Plaintiff says, the parties resumed negotiations. On March 7, 1995, the Clerk of the Superior Court issued an alias and pluries summons to CBP. Negotiations broke down on April 20, 1995, when Feed Products sued CBP in a Minnesota state court. Shortly thereafter, CBP served Feed Products with the summons in this action. Feed Products claims that CBP's failure to try to serve the original summons invalidates the alias and pluries summons.

Service of process in the North Carolina state courts is governed by Rule 4 of the North Carolina Rules of Civil Procedure. Rule 4(c) requires a summons to be served within thirty days after it is issued. If the summons is not served, it must be returned to the Clerk who issued it with a notation that it was not served and the reasons why.

If the summons cannot be served within thirty days, the plaintiff may sue out an alias and pluries summons at any time within ninety days from the date the summons was originally issued. N.C.R.Civ.P. 4(d)(2). Failure to comply with the requirements of Rule 4(c) will not alone invalidate a subsequent alias and pluries summons. *Smith v. Starnes*, 317 N.C. 613, 619, 346 S.E.2d 424, 428 (1986). However, failure to comply with the rules will prevent issuance of an alias and pluries summons from continuing an action when "done in bad faith and with the intent to delay and gain unfair advantage." *Smith v. Quinn*, 324 N.C. 316, 318, 378 S.E.2d 28, 30 (1989). Here, there is some question of Plaintiff's good faith: although phrased in terms of a reluctance to "disrupt the negotiations," CBP admits in its brief that the reason it did not serve Feed Products was that CBP did not want Feed Products to know that the action had been filed.

■ However, for purposes of this motion, this court need not answer this question. The purpose of an alias and pluries summons is to keep an action alive when a plaintiff cannot serve an original summons within the time limit provided by the rules. By keeping an action alive, it prevents a timely filed claim from becoming barred by a statute of limitations if a defendant cannot be served. An improperly issued alias and pluries summons may still serve as an original summons, but the action will be deemed to have begun with issuance of the subsequent summons, not the original one. *Webb v. Seaboard Air Line R.R. Co.*, 268 N.C. 552, 554, 151 S.E.2d 19, 21 (1966). Thus, whether this court treats the summons with which Feed Products eventually was served as an original summons or as an alias and pluries summons, the conclusion is the same, that the summons was valid process.

■ Finally, even if service of process was defective, Feed Products would not be entitled to dismissal. Instead, 28 U.S.C. § 1448 (1988), would allow CBP to perfect service of process now. *See Schmidt v. Wilbur*, 775 F.Supp. 216, 227 (E.D.Mich.1991); *Howse v. Zimmer Mfg., Inc.*, 109 F.R.D. 628, 631 (D.Mass.1986). Accordingly, Defendant Feed Products' motion to dismiss for improper service of process will be denied.[2]

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

---

2. Alternatively, the court could treat Feed Products' motion to dismiss as a Rule 41(b) motion to dismiss this action for failure to prosecute. *See Quinn*, 324 N.C. at 319, 378 S.E.2d at 31 (affirming dismissal for failure to prosecute where plaintiff, in bad faith, got series of alias and pluries summonses but did not attempt service for eight months). Because dismissal of an action without reaching the merits is "the most extreme sanction" that a court can impose, however, the court should not impose it lightly. *See United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir.1993). Here, there is no evidence of significant prejudice to Feed Products or of abuse of the judicial process such as would justify this sanction.

*ORDER*

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that Defendant Feed Products and Service Company, Inc.'s motion to dismiss be, and the same hereby is, DENIED.