IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-497

No. COA21-421

Filed 19 July 2022

Scotland County, No. 20 CVS 322

BECKY TROUBLEFIELD, Plaintiff,

v.

AUTOMONEY, INC., Defendant.

Appeal by Defendant from orders entered 19 January 2021 and 1 February 2021 by Judge Stephan R. Futrell in Scotland County Superior Court. Heard in the Court of Appeals 8 February 2021.

> *Brown, Faucher, Peraldo & Benson, PLLC, by Jeffrey K. Peraldo and James R. Faucher, for Plaintiff-Appellee.*

> *Womble Bond Dickinson (US) LLP, by Michael Montecalvo and Scott D. Anderson; L.W. Cooper Jr., LLC, by Lindsey W. Cooper, Jr, for Defendant-Appellant.*

WOOD, Judge.

¶ 1 AutoMoney, Inc. ("Defendant") appeals from an order denying its motion to dismiss under N.C. Gen. Stat. § 1A-1 Rule 12(b)(3) and another order denying its motion to dismiss under N.C. Gen. Stat. § 1A-1 Rule 12(b)(6). On appeal, Defendant contends the trial court erred by 1) not enforcing the choice-of-law provisions contained within its loan agreements; 2) not enforcing its loan agreements forum selection clause; and 3) determining minimum contacts existed to render personal

jurisdiction over it. Defendant petitions this Court by writ of certiorari to review the trial court's denial of its motion to dismiss under Rule 12(b)(6). In our discretion, we grant Defendant's writ of certiorari. After careful review of the record and applicable law, we affirm the orders of the trial court.

## I. Factual and Procedural Background

¶ 2 This dispute arises out of a car title loan agreement Defendant made with Becky Troublefield ("Plaintiff"). Defendant is a licensed South Carolina corporation with its principal place of business in Charleston, South Carolina. Defendant makes loans to individuals, which are secured by motor vehicles, commonly known as "car title loans." Defendant is a supervised lender under South Carolina law, and its consumer lending activities are regulated by the South Carolina State Board of Financial Institutions, Consumer Finance Division.

¶ 3 Plaintiff is a resident of Scotland County, North Carolina. In 2017, Plaintiff received an advertisement flier at her home in North Carolina from Defendant advertising its loan services. Upon receipt of the flier, Plaintiff called Defendant from North Carolina to inquire about a loan. Plaintiff spoke with one of Defendant's employees who asked her about the year, make, model, mileage, and condition of her vehicle. During the phone call, Defendant's employee told Plaintiff based upon her description of her vehicle, Defendant could provide her a loan in the amount of at least $1,000.00. When asked by the employee if she wanted the loan, Plaintiff

responded in the affirmative. Plaintiff was directed by the employee to drive to one of Defendant's stores in South Carolina with her car, car title, a paycheck stub, and proof of residency.

On March 31, 2020, Plaintiff traveled to Defendant's Bennettsville, South Carolina office. Upon reviewing Plaintiff's loan application and inspecting her vehicle to determine the amount of the loan, Defendant offered Plaintiff a higher amount for a loan than was initially discussed on the phone. At the South Carolina office, Plaintiff finalized and signed a loan agreement, presented her vehicle for an appraisal and inspection, and received a loan for $2,200.00 at an interest rate of 159%.

Plaintiff's loan agreement with Defendant contained both a choice of law and choice of venue provision that read, in relevant part:

> This Loan Agreement, Promissory Note, and Security Agreement (the "Agreements") are entered into by and between Creditor/Lender ("Lender") and Borrower/Debtor and Co-Borrower (collectively, the "Borrowers" or "you") in South Carolina as of the above date, subject to the terms and conditions set forth herein and any and all representations Borrowers have made to Lender in connection with these agreements. You acknowledge and agree you voluntarily entered into South Carolina, you entered into the Agreements in South Carolina, the Agreements are to be performed in South Carolina, and the lender is a regulated South Carolina consumer finance company. Therefore, the Agreements shall be interpreted, construed, and governed by and under the laws of South Carolina, without regard to conflict of law principles (whether of South Carolina or any other jurisdiction) that would cause the application of the laws of any jurisdiction

other than South Carolina. In the event that any dispute whatsoever arises between Lender and Borrowers in relation to or in any way in connection with the Agreements (a "Dispute"), the Dispute shall be brought exclusively in the courts of competent jurisdiction located in South Carolina, and the Agreements are subject to the exclusive jurisdiction of the state and federal courts located in South Carolina. The parties, knowingly, voluntarily, and irrevocably consent to jurisdiction and venue in South Carolina and waive any arguments as to forum non conveniens.

¶ 6    Plaintiff also signed a separate document entitled in bold and in caps, "ATTENTION NORTH CAROLINA CUSTOMERS ACKNOWLEDGMENT OF SOUTH CAROLINA LAW AND WAIVER OF CLAIMS FORM." This form states:

> The Borrower and/or the Co-Borrower is a resident of North Carolina or the vehicle subject to the Agreements is registered in North Carolina. In the section titled "Applicable Law, Jurisdiction, Venue" on page 1 of the Agreements . . . the Borrowers acknowledge and agree that they voluntarily entered into the State of South Carolina, they entered into the Agreements in the State of South Carolina, the Agreements are to be performed in South Carolina, and Lender is a regulated South Carolina consumer finance company. Borrowers separately initialed this section of the Agreements expressly agreeing that, in light of the above, the Agreements shall exclusively be interpreted, construed, and governed by and under the laws of the State of South Carolina. Because only South Carolina law applies to the Agreements, the Borrowers hereby explicitly waive, forfeit and release any and all demands, causes of action, actions, suits, damages, claims, counterclaims, and liabilities whatsoever arising under the laws or statutes of North Carolina or any other state than South Carolina relating to the Agreements.

¶ 7 In order to secure the loan, Defendant utilized a third-party electronic title storage company to place a lien on Plaintiff's vehicle with the North Carolina Department of Motor Vehicles. Thereafter, Plaintiff proceeded to make loan payments to Defendant over the phone. Plaintiff made these calls from North Carolina, and Defendant received the payments at one of its South Carolina office locations.

¶ 8 On May 18, 2020, Plaintiff filed a complaint against Defendant in Scotland County Superior Court alleging three causes of action against Defendant for violations of N.C. Gen. Stat. § 53-165 et. seq.—the North Carolina Consumer Finance Act (NCCFA)—, N.C. Gen. Stat. § 75-1.1.—Unfair and Deceptive Trade Practices Act (UDTPA)—, and alternatively, N.C. Gen. Stat. § 24-1.1, et. seq.—North Carolina usury laws.

¶ 9 In response, Defendant filed motions to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(2) and Rule 12(b)(6).[1] Defendant alleged it was not subject to jurisdiction in North Carolina, Plaintiff's claims should be dismissed due to the forum selection clause in the contract, and Plaintiff cannot state claims for which relief can

---

[1] The record does not contain a copy of Defendant's motion to dismiss under Rule 12(b)(3). Notwithstanding, the trial court judge at the hearing on January 11, 2021, Defendant "made a motion under Rule 12(b)(3) to dismiss based on improper venue . . . ." Plaintiff, in her brief, conceded Defendant filed a motion to dismiss pursuant to Rule 12(b)(3). Both parties briefed and addressed their respective arguments concerning Defendant's Rule 12(b)(3) motion. Thus, in our discretion we presume Defendant filed a Rule 12(b)(3) motion and address it herein.

be granted. In support of its Motion to Dismiss, Defendant filed an affidavit by Linda Derbyshire, ("Derbyshire") the owner, executive officer, and manager of Defendant. Derbyshire stated that Defendant is not registered to do business in North Carolina and never has been; does not make title loans in North Carolina; does not maintain offices in North Carolina; does not have a representative agent in North Carolina; and does not have a mailing address or telephone number in North Carolina. According to Derbyshire, Defendant does not advertise through radio, television, or billboards within North Carolina, does not directly market into North Carolina, and those loans can only be entered into and executed at one of Defendant's physical offices in South Carolina. Derbyshire attested that the "only way a loan payment can be made is via one of [Defendant's] South Carolina locations with payments [to] be accepted in person, by mail, or by card over the phone."

¶ 10 Derbyshire stated that Defendant maintains a website which is accessible by anyone, regardless of their residency, but the website prevents customers from submitting loan applications over the internet. Additionally, this website's homepage states: "Title loan transactions are prohibited with the State of North Carolina," and before anyone may enter the website, they must read the terms and conditions which state the same. As part of their motion to dismiss, Defendant also attached Plaintiff's loan agreement showing the choice of law provision and forum selection clause.

¶ 11 Subsequently, Plaintiff filed affidavits in opposition to Defendant's motion.

Plaintiff submitted an authenticated page from Defendant's website featuring an advertisement specifically addressing North Carolina residents:

> Are you a North Carolina resident? We've got you covered! You are just a short drive away from getting the cash you need! Do you live in the Charlotte area? What about Fayetteville or Wilmington? How about Hendersonville, Lumberton, Monroe, or Rockingham? There is a [sic] [AutoMoney] Title Loans right across the border with a professional and courteous staff ready to help you get the cash you need. Is it worth the drive? Our thousands of North Carolina customers would certainly say it is.

¶ 12        Moreover, a former assistant manager for Defendant attested that "during certain times of the year [Defendant] . . . would mail loan solicitation flyers into North Carolina" and mailed the materials to current and former borrowers. The affidavit of John Simmons, the owner of Steals & Deals Southeastern LLC [Steals & Deals], an advertisement magazine headquartered and primarily published in North Carolina, stated that from February 2013 through May 2019, Defendant ran a weekly advertisement within the magazine.[2] Affidavits from customers of Defendant, who were also North Carolina residents, attested to viewing television advertisements for Defendant and contacting Defendant while in North Carolina. A manager of Associates Asset Recovery, LLC, a North Carolina business, stated that between

---

[2] According to Simmons, Steals & Deals "is distributed in the following North Carolina counties: Harnett, Cumberland, Hoke, Robeson, Scotland, Richmond, Anson, Moore and Lee, and also in Chesterfield, Marlboro, Dillon and Darlington Counties in South Carolina.

January 1, 2016 to October 7, 2020, the business recovered 442 motor vehicles in North Carolina for Defendant.

¶ 13    On January 14, 2021, the trial court denied Defendant's Rule 12(b)(3) motion and concluded that the forum selection clause was unenforceable. On January 26, 2021, the trial court denied Defendant's Rules 12(b)(2) and 12(b)(6) motions and concluded that the court's exercise of personal jurisdiction over Defendant was constitutionally reasonable. On February 18, 2021, Defendant filed written notice of appeal from the trial court's two orders denying its motions to dismiss. Defendant also petitions this court by writ of certiorari to review the trial court's denial of its Rule 12(b)(6) motion to dismiss.[3]

## II.    Appellate Jurisdiction

¶ 14    As a preliminary matter, we note an order denying a motion to dismiss is an interlocutory order and thus not immediately appealable. *Can Am South, LLC v. State*, 234 N.C. App. 119, 122, 759 S.E.2d 304, 307 (2014) (quoting *Reid v. Cole*, 187 N.C. App. 261, 263, 652 S.E.2d 718, 719 (2007)); s*ee Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950) ("An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further

---

[3] On September 23, 2021, Plaintiff filed a motion with this Court to dismiss Defendant's appeal pertaining to the trial court's denial of its Rule 12(b)(6) motion. Plaintiff also requested an expedited ruling. This motion was referred to this panel.

action by the trial court in order to settle and determine the entire controversy."). A party may not appeal from "an interlocutory order or ruling of the trial judge unless such ruling or order deprives the appellant of a substantial right which he would lose if the ruling or order is not reviewed before final judgment." *North Carolina Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 437, 206 S.E.2d 178, 181 (1974) (citations omitted); *see also* N.C. Gen. Stat. § 1-277 (2021). Therefore, since Defendant's appeal from the trial court's orders denying its motion to dismiss is interlocutory, we first determine whether this appeal affects a substantial right.

¶ 15 Regarding Defendant's Rule 12(b)(2) motion, "motions to dismiss for lack of personal jurisdiction affect a substantial right and are immediately appealable." *A.R. Haire, Inc. v. St. Denis*, 176 N.C. App. 255, 257-58, 625 S.E.2d 894, 898 (2006) (citations omitted); *see* N.C. Gen. Stat. § 1-277(b) ("Any interested party shall have the right of immediate appeal from an adverse ruling as to the jurisdiction of the court over the person or property of the defendant . . . ."); *Can Am South, LLC*, 234 N.C. App. at 122, 759 S.E.2d at 307; *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 188 N.C. App. 302, 304, 655 S.E.2d 446, 448 (2008). Thus, Defendant's appeal from the order denying its Rule 12(b)(2) motion is properly before us on appeal.

¶ 16 Likewise, the denial of Defendant's motion to dismiss under Rule 12(b)(3) affects a substantial right and may be immediately appealed. *Capital Bank, N.A. v. Cameron*, 231 N.C. App. 326, 329, 753 S.E.2d 153, 155 (2013) (citing *Cable Tel Servs.*

*v. Overland Contr.*, 154 N.C. App. 639, 641, 574 S.E.2d 31, 33 (2002) ("[C]ase law establishes firmly that an appeal from a motion to dismiss for improper venue based upon a jurisdiction or venue selection clause dispute deprives the appellant of a substantial right that would be lost.")). As such, Defendant's appeal from the trial court's order denying its Rule 12(b)(3) motion is properly before us.

¶ 17        Turning next to Defendant's Rule 12(b)(6) motion, Defendant petitions this Court by a writ of certiorari to review the denial of its motion. We have held "it is an appropriate exercise of this Court's discretion to issue a writ of certiorari in an interlocutory appeal where there is merit to an appellant's substantive arguments, and it is in the interests of justice to treat an appeal as a petition for writ of certiorari." *Cryan v. Nat'l Council of YMCA of the United States*, 280 N.C. App. 309, 2021-NCCOA-612, ¶ 17 (cleaned up) (quoting *Zaliagiris v. Zaliagiris*, 164 N.C. App. 602, 606, 596 S.E.2d 285, 289 (2004)). Particularly, we have issued a writ of certiorari when the issue in question is significant, important, and will promote judicial economy. *Id.* at ¶ 18. The issue raised by Defendant's motion to dismiss under Rule 12(b)(6) in the present case is significant as it raises the critical question of whether our State's legislation prohibiting predatory title lending constitutes a fundamental public policy. Likewise, granting Defendant's petition for writ of certiorari will promote judicial economy as this appeal represents one of thirty-two proceedings against Defendant in North Carolina courts, seven of which are currently before this

Court. Therefore, in our discretion, we grant Defendant's petition for writ of certiorari to review its motion to dismiss under Rule 12(b)(6).

## III. Discussion

Defendant raises several issues on appeal. Each will be addressed in turn.

### A. Personal Jurisdiction

Defendant first contends the trial court erred by denying its Rule 12(b)(2) motion to dismiss. We disagree.

This Court utilizes a two-step analysis to determine whether personal jurisdiction exists over a non-resident defendant: "First, the transaction must fall within the language of the State's long-arm statute. Second, the exercise of jurisdiction must not violate the due process clause of the fourteenth amendment to the United States Constitution." *Banc of Am. Sec. LLC*, 169 N.C. App. at 693, 611 S.E.2d at 182 (cleaned up) (citing *Tom Togs, Inc. v. Ben Elias Industries Corp.*, 318 N.C. 361, 364, 348 S.E.2d 782, 785 (1986)); *see Lab. Corp. of Am. Holdings v. Caccuro*, 212 N.C. App. 564, 566, 712 S.E.2d 696, 699 (2011). *But see Tom Togs, Inc.*, 318 N.C. at, 365, 348 S.E.2d at 785 ("We have also held in considering N.C.G.S. § 1-75.4 that the requirements of due process, not the words of the long-arm statute, are the ultimate test of jurisdiction over a non-resident defendant."). Because Defendant does not challenge on appeal the applicability of our long-arm statute, we confine our analysis to whether the trial court's conclusion that it had personal jurisdiction over

Defendant violated the requirements of due process.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution "prevents states from rendering valid judgments against nonresidents." *In re F.S.T.Y.*, 374 N.C. 532, 534, 843 S.E.2d 160, 162 (2020) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559, 564, 62 L. Ed. 2d 490, 497 (1980)). A defendant must "be given adequate notice of the suit . . . and be subject to the personal jurisdiction of the court[] . . . ." *World-Wide Volkswagen Corp.*, 444 U.S. at 291, 100 S. Ct. 564, 62 L. Ed. 2d at 497; *accord In re F.S.T.Y.*, 374 N.C. at 534, 843 S.E.2d at 162.

Under the Due Process Clause, *minimum contacts* must exist between the forum state and nonresident such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Tom Togs, Inc.*, 318 N.C. at 365, 348 S.E.2d at 786 (cleaned up and emphasis added) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95, 102 (1945)). In other words, "there must be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.*; *see also World-Wide Volkswagen Corp.*, 444 U.S. at 297, 100 S. Ct. at 567, 62 L. Ed. 2d at 501 ("[I]t is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."); *Cherry Bekaert & Holland v. Brown*, 99 N.C. App. 626, 632,

394 S.E.2d 651, 655 (1990). However, "our minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285, 134 S. Ct. 1115, 1122, 188 L. Ed. 2d 12, 20 (2014) (internal quotation marks omitted).

¶ 23 There are two types of personal jurisdiction recognized by our Supreme Court sufficient for establishing minimum contacts: general and specific jurisdiction. *Beem USA Limited-Liability Ltd. P'ship v. Grax Consulting, LLC*, 373 N.C. 297, 303, 838 S.E.2d 158, 162 (2020). "General jurisdiction is applicable in cases where the defendant's affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Id.* (internal quotations marks omitted) (quotation omitted); *see also Lab. Corp. of Am. Holdings*, 212 N.C. App. at 569, 712 S.E.2d at 701 ("General jurisdiction may be asserted over a defendant even if the cause of action is unrelated to defendant's activities in the forum as long as there are sufficient continuous and systematic contacts between defendant and the forum state." (internal quotation marks omitted)). Specific jurisdiction exists when "the controversy arises out of the defendant's contacts with the forum state . . . ." *Tom Togs, Inc.*, 318 N.C. at 366, 348 S.E.2d at 786; *Beem USA Limited-Liability Ltd. P'ship*, 373 N.C. at 303-04, 838 S.E.2d at 162.

¶ 24 In the case *sub judice*, Plaintiff asserts Defendant is subject to a suit in North Carolina under specific jurisdiction. As such, our analysis is limited to whether this

State has specific jurisdiction over Defendant. A specific jurisdiction inquiry analyzes "the relationship among the defendant, the forum state, and the cause of action . . . ." *Tom Togs, Inc.*, 318 N.C. at 366, 348 S.E.2d at 786; *see Banc of Am. Sec. LLC*, 169 N.C. App. at 696, 611 S.E.2d at 184. "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284, 134 S. Ct. at 1121, 188 L. Ed. 2d at 20. This Court has established several factors to consider when evaluating whether minimum contacts exist: "(1) the quantity of the contacts; (2) the nature and quality of the contacts; (3) the source and connection of the cause of action with those contacts; (4) the interest of the forum state; and (5) the convenience to the parties." *A.R. Haire, Inc. v. St. Denis*, 176 N.C. App. 255, 260, 625 S.E.2d 894, 899 (2006) (citation omitted); *see Sherlock v. Sherlock*, 143 N.C. App. 300, 304, 545 S.E.2d 757, 761 (2001); *Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 617, 532 S.E.2d 215, 219; *Cherry Bekaert & Holland*, 99 N.C. App. at 632, 394 S.E.2d at 655.

¶ 25   The evidence presented in this present case shows Defendant's conduct created a substantial connection to North Carolina. Defendant contacted Plaintiff by sending her a publication to her North Carolina residence, soliciting her business; discussing the terms of the loan with her over the phone; offering her a loan amount over the phone; and accepting payments from Plaintiff while she was in North Carolina. In addition to its contact with this State through Plaintiff, Defendant contacted this

State through the following methods: 1) online advertisements directed towards North Carolina residents; 2) advertisements in Steals & Deals, a local North Carolina publication which primarily advertises therein; 3) telephone calls between Defendant and North Carolina residents; 4) repossession of vehicles located within North Carolina; 5) discussion of terms of the loan over the phone; 6) written solicitation letters; 7) offers of referral bonuses to North Carolina residents for referring new North Carolina customers; and 8) receipt of loan payments made from North Carolina.

¶ 26        Regarding Defendant's online advertisements, this court in *Havey v. Valentine* outlined the following tests to determine whether an internet website warrants the exercise of personal jurisdiction:

> [A] State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.

*Havey v. Valentine,* 172 N.C. App. 812, 816-17, 616 S.E.2d 642, 647 (2005). Notably, at least one of Defendant's internet advertisements directly targeted North Carolina:

> Are you a North Carolina resident? We've got you covered! You are just a short drive away from getting the cash you need! Do you live in the Charlotte area? What about Fayetteville or Wilmington? How about Hendersonville, Lumberton, Monroe, or Rockingham? There is a [sic]

> [AutoMoney] Title Loans right across the border with a
> professional and courteous staff ready to help you get the
> cash you need. Is it worth the drive? Our thousands of
> North Carolina customers would certainly say it is.

This advertisement is clearly a "manifested intent" to engage in business within North Carolina by recruiting our residents and providing them with information on how to acquire loans. Defendant's high interest car title loans would be void as a matter of public policy if offered by a company within North Carolina. Because Defendant attempts to circumvent North Carolina's predatory lending laws by operating from South Carolina while directly marketing to North Carolina residents, Defendant's internet advertisements satisfy the test for personal jurisdiction over internet communications as stated in *Havey*.

¶ 27 Moreover, Defendant ran an advertisement in a North Carolina publication for six consecutive years. Although running an advertisement in a national publication is not sufficient, standing alone, to establish personal jurisdiction, this Court has yet to address whether advertisements in a local publication can give rise to personal jurisdiction. *See Stallings v. Hahn*, 99 N.C. App. 213, 216, 392 S.E.2d 632, 634 (1990); *Marion v. Long*, 72 N.C. App. 585, 587, 325 S.E.2d 300, 303 (1985). Certainly, placing an advertisement in a publication which primarily circulates in a single state is sufficient for a defendant to reasonably anticipate being haled into that state's court. *See World-Wide Volkswagen Corp.*, 444 U.S. at 297, 100 S. Ct. at 567, 62 L. Ed. 2d at

501.

¶ 28    Because Defendant had direct contact with North Carolina through its business operations, internet advertisements, and local publication advertisements, Defendant purposefully "avail[ed] [it]self of the privilege of conducting activities within" North Carolina. *Tom Togs, Inc.*, 318 N.C. at 365, 348 S.E.2d at 786 (citation omitted). In other words, the sum and quality of Defendant's contacts with this State, paired with Defendant's obvious intent to recruit North Carolina clients, is sufficient to establish personal jurisdiction. Accordingly, we hold the trial court did not err by denying Defendant's Rule 12(b)(2) motion to dismiss.

**B. Rule 12(b)(6) Motion**

¶ 29    Defendant next asserts the trial court erred by denying its motion to dismiss under Rule 12(b)(6). After a careful review of the record and applicable law, we conclude the trial court committed no error.

¶ 30    We review a trial court's ruling on a motion to dismiss under Rule 12(b)(6) *de novo*. *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4 (2003), *aff'd per curiam,* 357 N.C. 567, 597 S.E.2d 673 (2003); *see Grich v. Mantelco*, LLC, 228 N.C. App. 587, 589, 746 S.E.2d 316, 318 (2013). A Rule 12(b)(6) motion to dismiss "tests the legal sufficiency of the complaint." *Stanback v. Stanback*, 297 N.C. 181, 185, 254 S.E.2d 611, 615 (1979) (citing *Sutton v. Duke*, 277 N.C. 94, 176 S.E.2d 161 (1970)). When "ruling on . . . [a Rule 12(b)(6)] motion the allegations of the complaint

must be viewed as admitted, and on that basis the court must determine as a matter of law whether the allegations state a claim for which relief may be granted." *Stanback*, 297 N.C. at 185, 254 S.E.2d at 615 (citing *Newton v. Standard Fire Ins. Co.*, 291 N.C. 105, 229 S.E.2d 297 (1976)); *see Sutton*, 277 N.C. at 103, 176 S.E.2d at 166 ("[A] complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim."); *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80, 84 (1957).

¶ 31 Here, Defendant argues the trial court should have granted its Rule 12(b)(6) motion because of the South Carolina choice of law provisions within its loan agreement and acknowledgement and waiver form mandating the application of South Carolina law and, thus, precluding Plaintiff's claims arising from North Carolina law. As a general rule, a "court interprets a contract according to the intent of the parties to the contract." *Cable Tel Servs. v. Overland Contr.*, 154 N.C. App. 639, 642, 574 S.E.2d 31, 33 (2002) (citing *Bueltel v. Lumber Mut. Ins. Co.*, 134 N.C. App. 626, 631, 518 S.E.2d 205, 209 (1999)); *Duke Power Co. v. Blue Ridge Electric Membership Corp.*, 253 N.C. 596, 602, 117 S.E.2d 812, 816 (1961). However, the intent of the parties must not "require the performance of an act prohibited by law." *Duke Power Co.*, 253 N.C. at 602, 117 S.E.2d at 816. When "parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of

the contract, such a contractual provision will be given effect." *Tanglewood Land Co. v. Byrd*, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980); *see Bueltel*, 134 N.C. App. at 631, 518 S.E.2d at 209 ("[I]t is apparent that when a choice of law provision is included in a contract, the parties intend to make an exception to the presumptive rule that the contract is governed by the law of the place where it was made."). A choice of law provision is binding "on the interpreting court as long as they had a reasonable basis for their choice and the law of the chosen State does not violate a fundamental public policy of the state or otherwise applicable law." *Torres v. McClain*, 140 N.C. App. 238, 241, 535 S.E.2d 623, 625 (2000) (quoting *Behr v. Behr*, 46 N.C. App. 694, 696, 266 S.E.2d 393, 395 (1980)); *see also Glover v. Rowan Mut. Fire Ins. Co.*, 228 N.C. 195, 198, 45 S.E.2d 45, 47 (1947) ("[I]t is a general rule of law that agreements against public policy are illegal and void."). A choice of law provision, or any such agreement, is against public policy when it "tend[s] to the violation of a statute." *Glover*, 228 N.C. at 198, 45 S.E.2d at 47 (citation omitted).

¶ 32      Plaintiff asserts that regardless of the choice of law provisions, Defendant is subject to North Carolina law under N.C. Gen. Stat. § 53-190. As such, we must determine whether N.C. Gen. Stat. § 53-190 constitutes a "fundamental public policy" or "otherwise applicable law" as to invalidate Defendant's choice of law provision and acknowledgement and waiver form. *See Torres*, 140 N.C. App. at 241, 535 S.E.2d at 625.

### 1. *N.C. Gen. Stat. § 53-190 is a Fundamental Public Policy*

¶ 33    N.C. Gen. Stat. § 53-190 states:

> (a) No loan contract made outside this State in the amount of or the value of fifteen thousand dollars ($15,000) or less, for which greater consideration or charges than are authorized by . . . [N.C. Gen. Stat. §§] 53-173 and . . . 53-176 of this Article have been charged, contracted for, or received, shall be enforced in this State. Provided, the foregoing shall not apply to loan contracts in which all contractual activities, including solicitation, discussion, negotiation, offer, acceptance, signing of documents, and delivery and receipt of funds, occur entirely outside North Carolina.
>
> (b) If any lender or agent of a lender who makes loan contracts outside this State in the amount or of the value of fifteen thousand dollars ($15,000) or less, comes into this State to solicit or otherwise conduct activities in regard to such loan contracts, then such lender shall be subject to the requirements of this Article.
>
> (c) No lender licensed to do business under this Article may collect, or cause to be collected, any loan made by a lender in another state to a borrower, who was a legal resident of North Carolina at the time the loan was made. The purchase of a loan account shall not alter this prohibition.

N.C. Gen. Stat. § 53-190 (2021). In other words, N.C. Gen. Stat. § 53-190 aims to protect North Carolina residents from predatory lending by nonresident, predatory loan corporations that infiltrate North Carolina through the contractual activities listed above.

¶ 34    In making our determination whether § 53-190 constitutes a fundamental public policy of this State, we are guided by our case law concerning predatory

lending. In *State ex rel. Cooper v. NCCS Loans, Inc.*, defendant offered immediate cash advances under the guise of an internet store wherein the customer was required to sign a year-long contract for "internet access." 174 N.C. App. 630, 635-36, 624 S.E.2d 371, 375 (2005). The customers were charged "100 times more" for internet access compared to legitimate internet providers and a high interest rate on the cash advanced. *Id.* at 637-38, 624 S.E.2d at 376-77. The trial court granted summary judgment against defendants for usury laws, violation of the North Carolina Consumer Finance act, and unfair and deceptive trade practices. *Id.* at 633, 624 S.E.2d at 373-74. On appeal, defendant challenged, among other things, the trial court's entry of summary judgment on plaintiff's claim of unfair and deceptive trade practices. *Id.*, 174 N.C. App. at 640, 624 S.E.2d at 378. We agreed with the trial court, stating "it is a 'paramount public policy of North Carolina to protect North Carolina resident borrowers through the application of North Carolina interest laws.' " *Id.* at 641, 624 S.E.2d at 378; *see* N.C. Gen. Stat. § 24-2.1(g) (2021); *Odell v. Legal Bucks, LLC*, 192 N.C. App. 298, 319, 665 S.E.2d 767, 780 (2008).

¶ 35        Moreover, a review of North Carolina's General Assembly's legislative action regarding predatory lending within our State further guides our decision. On December 20, 2006, our Supreme Court in *Skinner v. Preferred Credit*, addressed whether North Carolina had personal jurisdiction over the 1997-1 Trust, a nonresident defendant who held high interest loans. 361 N.C. 114, 119, 638 S.E.2d

203, 208 (2006). In a 4 to 3 decision, Justice Newby writing for the majority concluded "North Carolina courts lack personal jurisdiction over a nonresident trust that has no connections to this state other than holding mortgage loans secured by deeds of trust on North Carolina property." *Id.* at 127, 638 S.E.2d at 213. Justice Timmons-Goodson strongly dissented, writing the "Court's decision today aids in the exploitation of our state's most vulnerable citizens[,]" and "the majority's decision effectively undermines the right of unwitting victims of predatory lending practices . . . ." *Id.* (Timmons-Goodson, J., dissenting).

¶ 36          Less than four months after the decision in *Skinner*, our General Assembly enacted House Bill 1374, thus overturning the *Skinner* case. The bill was entitled "An Act to Overturn the Shepard Case and Amend the Limitation Regarding Actions to Recover for Usury; *To Overturn The Skinner Case* And Amend The Long-Arm Statute To Allow North Carolina Courts to Exercise Personal Jurisdiction Over Certain Nonresident Defendants; To Require That a Notice of Foreclosure Contain Certain Information; And to Provide for Mortgage Debt Collection and Servicing." 2007 N.C. Session Laws, House Bill 1374 (emphasis added). In addition to House Bill 1374, our General Assembly proceeded to pass four other bills addressing consumer mortgage lending in the summer of 2007. Susan E. Hauser, *Predatory Lending, Passive Judicial Activism, and the Duty to Decide*, 86 N.C.L. Rev. 1501, 1555 (2008).

¶ 37          Based upon our General Assembly's legislation prohibiting predatory lending,

its swift response to *Skinner*, and our case law governing predatory lending practices within the State of North Carolina, the issue of predatory lending is clearly a question of fundamental public policy for this State. Thus, since N.C. Gen. Stat. § 53-190 protects North Carolina citizens from predatory lending and our conclusion it constitutes a fundamental public policy of this State, we next determine whether Defendant violated this statute.

¶ 38    In pertinent part, N.C. Gen. Stat. § 53-190 prohibits predatory loans made elsewhere unless "all contractual activities, including solicitation, discussion, negotiation, offer, acceptance, signing of documents, and delivery and receipt of funds, occur entirely outside North Carolina." N.C. Gen. Stat. § 53-190(a). "Negotiation" is defined as "deliberation, discussion, or conference upon the terms of a proposed agreement, or as the act of settling or arranging the terms of a bargain or sale." *Cooper v. Henderson*, 55 N.C. App. 234, 235, 284 S.E.2d 756, 757 (1981). "Discussion" is defined as "[t]he act of exchanging views on something; a debate." *Discussion*, Black's Law Dictionary (10th ed. 2014).

¶ 39    Here, Defendant negotiated and discussed the terms of the loan agreement with North Carolina residents while they were in North Carolina. Plaintiff recounted the following in her deposition:

> In or about 2017, I got a car title loan from AutoMoney in Bennettsville, South Carolina. AutoMoney had mailed me a flier offering me a loan at my home in North Carolina. . . .

> After I received the flier, I called AutoMoney from my home in North Carolina. . . . The AutoMoney employee asked me if I had a car with clear title . . . [and the] year, make, model, mileage and condition of my car. . . . The AutoMoney employee told me that based on my car AutoMoney could make me a loan in the amount of at least $1000.00. They asked me if I wanted to get a loan. I told them I did want the loan and they told me to drive to the AutoMoney store in South Carolina. They told me to bring the car and the title to my car, a paycheck stub and proof of residency.

Per Plaintiff's affidavit, Defendant discussed details of the loan amount and the security interest for the loan with her over the phone. Furthermore, Derbyshire, in her deposition, stated Defendant would provide information about its business to potential borrowers who contacted Defendant. Because Defendant's business was providing high interest loans, these details would naturally be included in "information about its business."

¶ 40 We pause to note Defendant contends the trial court's February 1, 2020 order lacked findings of fact or analysis to support its ultimate dismissal of Defendant's Rule 12(b)(6) motion.[4] We are unpersuaded by this argument. Within the February 1, 2020 order, the trial court made specific findings of fact regarding Plaintiff's experience with Defendant as stated above. The trial court made further findings of

---

[4] A trial court is not required to make findings of fact or conclusions of law unless otherwise specifically requested by a party or as required under N.C. Gen. Stat. § 1A-1, R. 41(b). N.C. Gen. Stat. § 1A-1, R. 52. Defendant specifically requested such findings of fact at the end of the January 11, 2020 hearing.

fact that Defendant called other North Carolina residents to discuss a loan, the details of the loan, offer a loan, and receive acceptances of a loan. As such, we conclude the trial court's order contained sufficient findings of fact.

¶ 41 By discussing its business and the terms of contracts by phone with North Carolina residents, Defendant discussed and negotiated loans within North Carolina as defined by N.C. Gen. Stat. § 53-190. Therefore, we conclude Defendant violated N.C. Gen. Stat. § 53-190, and in turn, violated a fundamental public policy of North Carolina. As such, we hold the choice of law provisions within Defendant's loan agreement and its acknowledgement and waiver form is void as a matter of public policy and the trial court properly denied Defendant's Rule 12(b)(6) motion.

## C. Venue

¶ 42 Defendant next contends the trial court erred by denying its motion to dismiss under Rule 12(b)(3), and thus failing to enforce its South Carolina forum selection clause. We disagree.

¶ 43 In the case *sub judice*, the trial court concluded, *inter alia*, "the forum selection clause is against public policy and is void and unenforceable." This Court reviews a trial court's decision concerning forum selection clauses under the abuse of discretion standard of review. *Mark Group Int'l, Inc. v. Still*, 151 N.C. App. 565, 566, 566 S.E.2d 160, 161 (2002); *see Appliance Sales & Serv. v. Command Elecs. Corp.*, 115 N.C. App. 14, 21, 443 S.E.2d 784, 789 (1994). *But cf. US Chem. Storage, LLC v. Berto Constr.,*

*Inc.*, 253 N.C. App. 378, 382, 800 S.E.2d 716, 720 (2017) ("A trial court's interpretation of a forum selection clause is an issue of law that is reviewed *de novo*."). "The test for abuse of discretion requires the reviewing court to determine whether a decision 'is manifestly unsupported by reason,' or 'so arbitrary that it could not have been the result of a reasoned decision.' " *State v. Locklear*, 331 N.C. 239, 248, 415 S.E.2d 726, 732 (1992) (quoting *Little v. Penn Ventilator Co.*, 317 N.C. 206, 218, 345 S.E.2d 204, 212 (1986)).

¶ 44        Defendant's loan agreement contained a forum selection clause, designating South Carolina as the venue in which Plaintiff may bring suit. A forum selection clause "allow[s] a court to refuse to exercise that jurisdiction in recognition of the parties' choice of a different forum." *Perkins v. CCH Computax, Inc.*, 333 N.C. 140, 143, 423 S.E.2d 780, 782 (1992). Under N.C. Gen. Stat. § 22B-3,

> any provision in a contract entered into in North Carolina that requires the prosecution of any action or the arbitration of any dispute that arises from the contract to be instituted or heard in another state is against public policy and is void and unenforceable. This prohibition shall not apply to non-consumer loan transactions or to any action or arbitration of a dispute that is commenced in another state pursuant to a forum selection provision with the consent of all parties to the contract at the time that the dispute arises.

N.C. Gen. Stat. § 22B-3 (2021). Moreover, "a forum selection clause should be invalid if enforcement would 'contravene a strong public policy of the forum in which suit is

brought.'" *Perkins* at 144, 423 S.E.2d at 783 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S. Ct. 1907, 1916, 32 L. Ed. 2d 513, 523 (1972)).

¶ 45 The threshold question becomes whether Defendant's forum selection clause contravenes a strong public policy, thus rendering it invalid. Here, the trial court found "[t]he car title loan giving rise to this civil action was by law made and entered into pursuant to N.C. Gen. Stat. § 24-2.1[,]" and, therefore, under N.C. Gen. Stat. § 22B-3 is void as a matter of public policy.

¶ 46 As discussed above, protecting North Carolina residents from predatory lending is a strong public policy of this State. The enforcement of Defendant's forum selection clause would contravene our State's interest in offering such protection by allowing corporations to circumvent our laws through merely establishing themselves in a different state. Moreover, because we are affirming the trial court's denial of Defendant's motion to dismiss under Rule 12(b)(2) and Rule 12(b)(6), to uphold its forum selection clause would functionally undermine our ruling. Therefore, we conclude Defendant's loan agreement forum selection clause is void as a matter of public policy.

¶ 47 Even if the forum selection clause is valid notwithstanding the reasons stated *supra*, it is nonetheless invalid under N.C. Gen. Stat. §§ 24-2.1 and 22B-3. Turning first to N.C. Gen. Stat. § 24-2.1, it provides,

> (a) For purposes of this Chapter, any extension of credit

shall be deemed to have been made in this State, and therefore subject to the provisions of this Chapter *if the lender offers or agrees in this State to lend to a borrower who is a resident of this State, or if such borrower accepts or makes the offer in this State to borrow*, regardless of the situs of the contract as specified therein.

(b) *Any solicitation or communication to lend*, oral or written, originating outside of this State, but forwarded to and received in this State by a borrower who is a resident of this State, shall be deemed to be an offer or agreement to lend in this State.

. . .

(g) It is the paramount public policy of North Carolina to protect North Carolina resident borrowers through the application of North Carolina interest laws. Any provision of this section which acts to interfere in the attainment of that public policy shall be of no effect.

N.C. Gen. Stat. § 24-2.1(a)-(b) (2021) (emphasis added); *see NCCS Loans, Inc.*, 174 N.C. App. at 641, 624 S.E.2d at 378. "Deem," as used above, is defined as "[t]o treat [something] as if . . . it were really something else[] . . . ." *Deem*, Black's Law Dictionary, (10th Ed. 2014).

¶ 48        Defendant's actions are subject to the provisions of N.C. Gen. Stat. § 24-2.1. First, Plaintiff is a citizen and resident of Scotland County, North Carolina. Second, Plaintiff received an advertisement letter from Defendant to her North Carolina address. This advertisement letter, in effect, solicited her to engage in a loan with Defendant. As a result of Defendant's solicitation, Plaintiff called Defendant and discussed the terms of a loan. While on the phone, Defendant asked Plaintiff if she

wanted to acquire a loan, to which she answered in the affirmative. Although Plaintiff entered into the loan with Defendant in South Carolina, Defendant "offer[ed] or agree[d] in this State to lend to . . . Plaintiff who is a resident of this State" and "solicitit[ed] or communicat[ed] to lend" while Plaintiff was in North Carolina. As a result of these actions with Plaintiff, Defendant is subject to N.C. Gen. Stat. § 24-2.1(a)-(b).

¶ 49        Accordingly, we review Defendant's loan agreement as though it was made in North Carolina. Because N.C. Gen. Stat. § 22B-3 provides that forum selection clauses in contracts such as the one prepared by Defendant are "against public policy and . . . void and unenforceable[,]" Defendant's loan agreement forum selection clause is void as a matter of public policy under N.C. Gen. Stat. §§ 24-2.1 and 22B-3. *Szymczyk v. Signs Now Corp.*, 168 N.C. App. 182, 185, 606 S.E.2d 728, 731 (2005) (citation omitted).

## IV.    Conclusion

¶ 50        Based on the reasons stated above, Defendant is subject to personal jurisdiction in North Carolina, and as such, the trial court did not err by denying Defendant's motion to dismiss under Rule 12(b)(2). Furthermore, Defendant's actions violated N.C. Gen. Stat. § 53-190. Therefore, the trial court did not err by denying Defendant's motion to dismiss under Rule 12(b)(6). Additionally, the trial court did not err by denying Defendant's motion to dismiss under Rule 12(b)(3). Thus, the

orders of the trial court are affirmed.  It is so ordered.

AFFIRMED.

Judges HAMPSON and GORE concur.